## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00404-SCT

*SAM BOOKER a/k/a SAMMIE LEE BOOKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/96 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE D. ROUSSELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DEWITT L. FORTENBERRY, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/16/98 |
| MOTION FOR REHEARING FILED: | 4/28/98 |
| MANDATE ISSUED: | 6/22/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Sam Booker was indicted as an habitual offender by a jury of the Covington County Circuit Court on July 12, 1995, for the burglary of an apartment occupied by his estranged girlfriend, Linda Easterling, pursuant to former Miss. Code Ann. § 97-17-21. Following a jury trial in January, 1996, where he was found guilty as charged, Booker was sentenced by the circuit court as an habitual offender to a term of ten years in the custody of the MDOC. His motion for a Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, a New Trial, was denied by the circuit court on April 3, 1996.

¶2. Aggrieved by the circuit court's decision, Booker now appeals to this Court. We find no merit to his assertions that the circuit court erred in not granting his motion to quash the indictment and in failing to sustain his motion for a directed verdict at the close of the State's case in chief; that the State used challenges for cause and its peremptory challenges to purposely and systematically exclude blacks from the jury; that the District Attorney made improper comments on cross-examination and in his closing arguments; that the venire was tainted and prejudiced against the defendant; and that evidence of the defendant's prior criminal record was more prejudicial than probative. We therefore

affirm Booker's sentence and conviction.

I.

¶3. Susan Easterling lived at the Hillsdale Apartments in Collins, Mississippi. She started seeing Sam Booker in July, 1994. Despite the apartment's policy against live-in boyfriends, Booker stayed with Easterling from time to time. There was conflicting testimony, however, as to the extent to which Booker was still "staying with" Easterling in January, 1995. Witnesses for the prosecution testified that Booker did not live there; witnesses for the defense say that he was.

¶4. Theirs was not the happiest of relationships, with Easterling indicating that she had stopped seeing Booker because he was "beating on me." Booker complained about her drinking and staying out late despite the fact that three of her four young children lived with her. He had moved in with another woman. Police, however, confirmed that Easterling had filed several complaints against Booker when he had come back to her apartment.

¶5. On January 23, 1995, Easterling and her sister, Angela Burkhalter, returned from Hattiesburg in the early morning hours to find Booker sitting in Easterling's apartment. Easterling ran from the building back to the street, where a friend took her to the Police Department. Officer Greg Davis checked out the apartment, determined that Booker had left, and because Easterling had no phone with which to call the police, told her to turn off the light in the "first bedroom" if Booker came back; Davis would observe the apartment.

¶6. After the police left, Booker came back, knocking and banging on the front door, despite Easterling's insistence that he leave. He tried unsuccessfully to pick the front door lock. Apparently undaunted, Booker admittedly removed part of a pane of glass from an already cracked window in the kitchen, unlatched it and climbed in the apartment. Once in the apartment, Booker took Easterling by the neck and walked her down the hall. Easterling testified that he "snatched me by my neck" and "threw me in the front room." Burkhalter stated that Booker took her sister, "grabbed her by the neck and walked her down the hall." Booker testified that he didn't lay a hand on her. Both women testified that they were frightened and crying.

¶7. Officer Davis first went to Easterling's apartment at approximately 12:40 a.m. He testified that she was frightened and crying. After searching the premises, he parked on Highway 84, where he could observe the apartment. He received a call from Officer Bart Graves that the light was off in the Easterling apartment; Graves went to the back of the building and Davis went to the front door, testifying that after he knocked several times, Easterling "rushed and opened the door and pushed me out of the way and came out crying saying, 'He's in there. He's in there.'" Officer Graves testified that Easterling emerged from the apartment in a state of "sheer terror;" she was "[c]rying -- just all about herself. She was just shaking all over." Booker, however, denied that she was crying.

¶8. Officers Davis and Graves found Booker standing in a closet in the bedroom where the light was turned off. Although they had been advised that he might be armed, the black pouch he was wearing on his waist contained only "some spray utensils, some air freshener -- something, some type of clothing."

¶9. Booker maintained throughout trial that he didn't do anything wrong, testifying that "Well, I came

on in because I had the free will to come on in just like I had been doing 'cause I stayed there, you know." and that " Like I said, I was staying there, and I had the right to - - I figured I had the right to do that 'cause that's what I'd been doing - - 'cause she let me have my way because she cared about me like I cared about her." He variously contended that the whole incident was a misunderstanding, that Easterling's sister had "lured her to do all that," and that Easterling was getting back at him for going to live with another woman, stating, "As a matter of fact, she told my friend Al, she had told him a couple of -- that she was going to put the white folks on me because I wouldn't do her like -- supposed to do her, like kiss her but and get along with her."

## II.

¶10. Booker first asserts that the circuit court erred in not quashing the indictment against him for burglary, arguing that it did not state with the requisite particularity the underlying crime or intent. The grand jury's indictment charged, in relevant part, that:

### SAM BOOKER A/K/A SAMMIE LEE BOOKER

in said County and State on or about the *23rd day of January, A.D., 1995* did then and there willfully, unlawfully, feloniously and burglariously *break and enter the dwelling house of Linda Easterling, at a time when said dwelling was occupied by Linda Easterling, said SAM BOOKER A/K/A SAMMIE LEE BOOKER having the intent to commit an assault,* in violation of Section 97-17-21 of the Mississippi Code of 1972, annotated,

Former Miss. Code Ann. § 97-17-21[1] defined the crime of burglary as follows:

*Every person who shall be convicted of breaking and entering*, in the day or night, the dwelling house of another, in which there shall be, at the time, some human being, *with intent to commit some crime therein*, either by forcibly bursting or breaking the wall, or an outer door, window or shutter, of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter, or by breaking in in any other manner, or with the assistance of one or more confederates, then present and assisting, or by unlocking an outer door by means of false keys, or by picking the lock thereof, shall be guilty of burglary, and imprisoned in the penitentiary not less than seven years nor more than fifteen years.

Miss. Code Ann. § 97-17-21 (repealed effective April 11, 1996)(emphasis added). Booker relies on *Brumfield v. State,* 206 Miss. 506, 40 So. 2d 268 (1949) for the proposition that the indictment also must contain specific details of the second element of the crime of burglary, to wit: the intent to commit some crime therein. Thus, he argues, "an indictment for assault would have to contain language such as . . . by placing the defendant in fear of imminent serious bodily harm, or by placing the victim in fear of imminent serious bodily harm by exhibiting a weapon. . . . An indictment for burglary which uses assault as the underlying felony necessary to complete the burglary should be held to no less a standard." We find Booker's reliance on *Brumfield* to be somewhat misplaced. In that case, the indictment truly failed to "fully notify the defendant of the nature and cause of the accusation" as required by Rule 7.06 of the Uniform Rules of Circuit and County Court Practice. It stated only that the defendant was charged with the crime of burglary "'with the felonious and burglarious intent of him, the said Defendant, to then and there commit some crime to the Grand

Jurors unknown.'" ***Brumfield***, 206 Miss. at 507, 40 So. 2d at 268. There was no mention of the crime Brumfield intended to commit once he entered the occupied dwelling. The indictment in the case *sub judice*, however, specifically alleged that Booker broke and entered the dwelling occupied by Linda Easterling with "the intent to commit an assault."

¶11. In ***Peterson v. State,*** 671 So. 2d 647 (Miss. 1996), this Court construed strictly the requirement of former Rule 2.05 of the Uniform Criminal Rules of Circuit Court Practice that an indictment contain "the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." Thus, we found that an indictment for sexual battery pursuant to Miss. Code Ann. § 97-3-95 was fatally defective because it failed to allege lack of consent. ***Peterson***, 671 So. 2d at 655. Since § 97-3-95 provides that an individual may be guilty of engaging in sexual penetration with either a person (1) under the age of fourteen years or one who is (2) mentally defective, mentally incapacitated or physically helpless, the majority reasoned that the defendant was not provided with the actual notice necessary to prepare his defense. ***Id.***

¶12. Unlike the crime of sexual battery at issue in ***Peterson***, the crime of burglary does not contain two separate and distinct "subcrimes," depending on the nature of the victim, which must be specified to indicate whether the defendant is being indicted under subsection (1) or (2) of the statute. Rather, the intent to commit some crime, be it a felony or a misdemeanor, is simply an element of the crime of burglary. *See **Ashley v. State,*** 538 So. 2d 1181, 1184 (Miss. 1989)("the word 'crime' in our burglary statutes includes misdemeanors as well as felonies"). Even in light of the precision required by ***Peterson***, Booker was fully notified of the charges against him by the language "with the intent to commit an assault," which clearly enunciated that he need not be prepared to defend himself against charges of burglary with the intent to commit assault with a deadly weapon, rape, larceny or whatever. That the indictment charged him with burglary with the intent to commit assault, in general terms, provided sufficient notice of the charges against him.

> The rule is well established, however, that even though in burglary and statutory housebreaking the intent, as defined by the law, is simply to commit a felony, it is not sufficient for the indictment to use these general words; the particular felony intended must be specified. The allegation of the ulterior felony intended need not, however, be set out as fully and specifically as would be required in an indictment for the actual commission of that felony. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent to steal, or commit the crime of larceny, rape or arson.

13 Am. Jur. 2d Burglary § 36 (1964). We therefore do not hold the circuit court in error for denying Booker's motion to quash the indictment.

### III.

¶13. The circuit court denied Booker's motion for a directed verdict at the close of the State's case-in-chief. Booker now contends that the ruling was erroneous, asserting that the State failed to show that Easterling had been assaulted or that Booker had intended to assault her when he entered the apartment. Booker cites no authority for his argument. This Court, therefore, is not obligated to consider the assignment of error. ***Jackson v. State***, 684 So. 2d 1213, 1223 (Miss. 1996); ***McClain v. State***, 625 So. 2d 774, 781 (Miss. 1993); ***Baine v. State***, 604 So. 2d 249, 255 (Miss. 1992).

¶14. Moreover, when considering all of the evidence in a light most favorable to the State, as well as all reasonable inferences that may be drawn therefrom, there is substantial evidence in support of the verdict and it is not such that reasonable and fair-minded jurors could only find Booker not guilty. *Morgan v. State,* 703 So. 2d 832, 835 (Miss. 1997); *Franklin v. State,* 676 So. 2d 287, 288 (Miss. 1996). The circuit court correctly denied Booker's motion for a directed verdict.

IV.

¶15. Booker next asserts that the prosecution used its peremptory challenges and challenges for cause to "purposefully and systematically" exclude African Americans from the jury so as to effect an all-white jury in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). In each instance of which Booker now complains, the circuit court found the basis of the State's challenge to be race-neutral.

¶16. It is not the fact that a jury is all white or all black that violates *Batson;* rather, it is the racially discriminatory use of peremptory challenges to strike jurors. *Govan v. State,* 591 So. 2d 428, 430 (Miss. 1991). To establish a case of racial discrimination in the rejection of potential jurors, the defendant must show:

> [H]e is member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96 (citations omitted). The circuit court's findings as to whether the State exercised race-neutral peremptory challenges will be given great deference and will not be reversed unless they appear to be clearly erroneous. *Coleman v. State,* 697 So. 2d 777, 785 (Miss. 1997); *Johnson v. State*, 529 So. 2d 577, 583 (Miss. 1988); *Lockett v. State,* 517 So. 2d 1346, 1349 (Miss. 1987).

¶17. Notwithstanding that *Batson* applies only to peremptory challenges and not to excuses for cause, *Brown v. Blackwood,* 697 So. 2d 763, 772 (Miss. 1997), Booker condemns as racially discriminatory the challenges for cause of jurors Naomi Draughn, Narcie Magee, and Horace Goudy, Jr. He further complains that all of the State's peremptory challenges but one were made against blacks: Dennis Martin, Arlean Rebecca Musgrove and Deanne Williams. The record indicates that Draughn said that she couldn't make a decision in this case. While the circuit court denied the State's challenge of Magee for cause, it found that the peremptory strike against her was race-neutral since her religious convictions kept her from passing judgment on others. Gaudy had been friends with Booker all of his life; his niece was married to Booker's brother, and he indicated that he would rather not serve on the jury because of the relationships. Martin, to whom Booker objected because he allegedly was seen talking with one of the law enforcement officers at the trial, was stricken because he was a friend of Eddie Fry, a witness for the defense. Williams was a friend of both Booker and one of the defense witnesses, Pammy Drake. Booker did not raise a *Batson* challenge to the State's peremptory strike of Musgrove at trial; further, the record does not indicate her race. The record supports the circuit judge's finding that jurors were struck for race-neutral reasons. Especially

considering the relationships between the potential jurors and both the defendant and other witnesses for the defense, the circuit court's findings were not clearly erroneous.

## V.

¶18. Booker asserts that the prosecution's closing argument impermissibly prejudiced the jury by making a "conscience of the community argument." No objection was made to the comments at trial, so he is barred from now raising the matter on appeal. *Lester v. State,* 692 So. 2d 755, 795 (Miss. 1997).

## VI.

¶19. Booker next contends that he further was prejudiced by the prosecutor's suggestion, in cross-examining him and in closing arguments, that in order to find him not guilty, the jurors would have to believe that two police officer witnesses lied under oath. No record references are provided for our consideration. Further, no objections were made at trial to the prosecutor's closing arguments or to any part of Booker's cross-examination that could be construed as the testimony at issue, thus barring the assignment of error. *Lester,* 692 So. 2d at 795. Booker provides no meaningful argument, authority or proof to support his assertion that the prosecutor's question as to why police officers would come into court and lie to the jury "compelled the witness to testify that the law enforcement officers must have lied during their testimony." This Court "cannot decide an issue based on assertions in the brief alone; rather, issues must be proven by the record." *Medina v. State,* 688 So. 2d 727, 732 (Miss. 1996). The issue is not properly before this Court.

## VII.

¶20. In his next assignment of error, Booker claims that his case was prejudiced even before the trial began because members of the venire saw him in shackles and chains and other potential jurors were seen talking with members of the Collins Police Department who testified at the trial. He argues, therefore, that the circuit court erred in denying his motion to dismiss the venire.

¶21. Booker filed a motion to preclude the Sheriff's Department from bringing him into court in shackles and to limit the number of uniformed police officers in the courtroom during the trial. There is no evidence in the record, however, to support his assertion on appeal that he was seen in chains and shackles by potential jurors. "'[T]his Court will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record.'" *Medina,* 688 So. 2d at 732 (quoting *Robinson v. State,* 662 So. 2d 1100,1104 (Miss. 1995)). Further, assignments of error cannot be "based on assertions in the briefs alone; rather, issues must be proven by the record." *Id.*

¶22. Booker also contends that the venire was tainted by three potential jurors, Earl Lee, Earline Truitt and Dennis Martin, who allegedly were seen talking with two witnesses. The circuit court denied Booker's motion to dismiss the entire venire and instead, questioned the venire members individually. Earl Lee was excused by the court because he indicated that his mind was on his health problems and not on the trial and because the circuit judge thought that he looked like he was sleeping during part of voir dire. Earline Truitt was excused because one of the State's witnesses, Officer Graves, was her brother. Dennis Martin, whose strike was complained of *supra* as a *Batson* violation, was excused for cause by the State because he was a friend of Eddie Fry, one of the

witnesses for the defense. The record indicates that none of these venire members exchanged anything more than pleasantries with the witnesses and did not discuss the case with them. Further, all three were excused or struck for cause. There is no merit, therefore, to the assignment of error.

VIII.

¶23. The circuit court found that evidence of Booker's prior convictions for possession of marijuana and assault on an officer was inadmissible. He overruled his motion in limine in part, however, to keep from the jury evidence of a prior conviction for credit card fraud, finding that because it was a crime involving dishonesty or a false statement, it was more probative than prejudicial. Booker, whose prior conviction arose from the fraudulent use of a credit card he had found, now bases his assertion that admission of the evidence was prejudicial on **United States v. Yeo**, 739 F. 2d 385 (8th Cir. 1984), which, he asserts, holds that the crime of *theft* is not a crime of dishonesty or false statement.

¶24. Miss. R. Evid. 609(a)(2) allows the introduction of evidence of prior crimes involving "dishonesty and false statements" to impeach a witnesses credibility. **Hopkins v. State**, 639 So. 2d 1247, 1249 (Miss. 1993). The **Hopkins** Court looked to the Senate Judiciary Committee Report on 28 U.S.C.A. Rule 609, the analogous federal rule, which defined "dishonesty and false statements" as:

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in the nature of *crimen falsi* the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully.

**Hopkins,** 639 So.2d at 1249-50 (quoting 28 U.S.C.A., Rule 609, Notes of Committee on the Judiciary, Senate Report No. 93-1277. Note to Subdivision (a). (West 1984 & Supp.1993)). Booker, by his own admission, found the credit card and used it to purchase a TV, a VCR, a radio, a ring and a watch. No theft was involved; just the fraudulent use of another's credit card. Booker falsely represented himself as the individual whose name was on the card. Because this is a crime involving fraud and dishonesty, there is no merit to the assignment of error.

IX.

¶25. Finding no merit to the assignments of error raised in Booker's appeal, we affirm his conviction and sentence as an habitual offender.

¶26. **CONVICTION OF BURGLARY OF AN OCCUPIED DWELLING AS AN HABITUAL OFFENDER AND SENTENCE OF 10 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. Miss. Code § 97-17-21 was repealed effective April 11, 1996. Miss. Code Ann. § 97-17-23, enacted effective April 11, 1996, now provides as follows for the crime of burglary:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.

The section further was revised in 1996 so as to provide that daytime burglaries are no less criminal than those committed at night.