ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Quitman County Circuit Court found Richard White guilty of burglary of a dwelling.[1] The circuit court sentenced White to twenty-five years in the custody of the Mississippi Department of Corrections. White appeals and makes only one claim. He argues that the circuit court committed plain error when it did not sua sponte instruct the jury on the elements of larceny and/or assault — the underlying intended crimes that the indictment listed for the burglary charge. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. For more than thirty-five years, Newell Inman and his wife, Johanna, lived at the same address in Lambert, Mississippi, a small town in Quitman County. On *803 Sunday,-January 29, 2012, Newell and Johanna drove to Okolona, Mississippi, to visit a sick relative in the hospital. It was dark when they arrived home a little after 7 p.m. Newell was driving, and Johanna was in the front passenger’s seat.
■ ¶ 8. As they approached their home, Newell and Johanna both noticed that a light was on in one of the two storage rooms connected to their carport. The doors to the storage rooms were shut and unlocked. Newell thought that Johanna had left the light on, and Johanna thought that Newell was responsible for the light. As 'Johanna was exiting the parked car, Newell asked her.to turn off the light in the storage room, which was immediately to her right. Johanna opened the storage-room door just enough to reach the light switch inside. But the light was already off. Johanna turned the light back on.
¶ 4. Johanna was surprised by an intruder in her storage room. His hands were behind his back, as though he was hiding a weapon. ■ According to Johanna, the intruder was standing in ,a .“parade rest” or “at ease” military posture. Johanna screamed for Newell..
¶ 5. As sixty-five-year-old ’’ Newell rushed around the car to help Johanna, the intruder tried to escape. Newell swung at him-and missed. The significantly younger intruder pummeled Newell with something metallic, knocking- Newell to his knees and shattering his glasses. Newell’s head was severely lacerated, and his right arm was broken.[2] Thé intruder fled around the carport and across the yard. Regaining his balance, Newell briefly tried to chase the intruder. Newell had to stop when blood from the lacerations on his head began to obscure his vision.
¶ 6. While driving to the emergency room, Johanna called-911. At that time, Johanna did not recognize the intruder. But Newell did from the many times he had seen him around town. However, Newell did not know the intruder’s name.
117. The next day, the Inmans positively identified White as the intruder. They recognized him from a photograph that was presented by law enforcement. Johanna also showed .law-enforcement officers the undisturbed metal file that she had found in the front yard. Newell in- ■ ventoried the storage room and discovered that he was missing a hammer, a pair of Channellock pliers, at least two files, and some of-his screwdrivers. Law-enforcement officers found a fingerprint on a box in the storage room where the intruder had been hiding. A fingerprint examiner from the Mississippi Crime Laboratory later testified that the fingerprint matched the middle finger on White’s left hand. Newell and Johanna both testified during White’s trial. They each identified White as the intruder.
¶ 8. - White was questioned after he was arrested. He denied any involvement in the burglary. At trial, White testified that he was at his home in Lambert with family when the crimes occurred. But he did not call any' witnesses t.o corroborate his claimed alibi.
¶ 9. In rebuttal, the prosecution called Charlie Booker Jr., who lived close to the Inmans’ residence. Booker testified that White had been at his- house late on the afternoon of the burglary. White had stopped by to see Booker’s father. White left on foot after Booker told him that his father was not at home.
*804 ¶ 10. During closing arguments, White’s attorney argued that the Inmans’ in-court identification of White was tainted by the allegedly suggestive photo identification the day after the crime. White’s attorney also argued that the fingerprint examiner’s testimony was just an opinion, and experts often make mistakes. White did not dispute that the intruder, whoever he was, broke into the Inmans’ storage room to steal something and/or arm himself in case he was discovered. ■ Neither White nor the State submitted a proposed jury instruction on the essential elements of larceny. However, the jury was necessarily instructed on the essential elements of assault by way of the jury instruction on aggravated assault, which was the second count in the two-count indictment. As previously mentioned, the jury found White guilty of burglary of a dwelling but, inexplicably, acquitted him of aggravated assault. White appeals.
ANALYSIS
¶ 11. According to White, he is entitled to a new trial because the circuit court committed plain error in instructing the jury. For the first time on appeal, White argues that the circuit court should have sua sponte instructed the jury on the elements of larceny and/or assault. In other words, White’s claim is based on the concept that the essential elements of dwelling-house burglary must also include the essential elements of the crime that he intended to commit when he broke into'the Inmans’ home.
¶ 12. White is correct that the circuit court is responsible for assuring that the jury is “fully and properly instructed on all issues of law relevant to the case.” Harrell v. State, 134 So.3d 266, 270 (¶ 14) (Miss.2014) (quotation omitted). A circuit court commits plain error if it does not instruct the jury on the essential elements of the crime. Bolton v. State, 113 So.3d 542, 544 (¶ 4) (Miss.2013). The circuit court instructed the jury that it was to find White guilty of burglary of a dwelling if it found beyond a reasonable doubt that White “did unlawfully, willfullyf, and] felo-niously break and enter the [Inmans’] dwelling house ... with the intent to commit the crime of larceny and/or assault. ...”
¶ 13. A person is guilty of burglary of a dwelling upon proof beyond a reasonable doubt “of breaking and entering the dwelling house or inner door of such dwelling house of another ... with intent to commit some crime therein.... ” Miss. Code Ann. § 97-17-23(1) (Rev.2014) (emphasis added). The prosecution is not obligated to prove that the accused actually committed the underlying offense of the burglary; but it must prove that at the time of the breaking and entry, the accused intended to commit some specific offense. Daniels v. State, 107 So.3d 961, 964 (¶ 16) (Miss.2013). That is, the prosecution must “offer proof of the intent to commit some specific crime as the second element of burglary.” Id. (emphasis added). Therefore, the Mississippi Supreme Court has held that because the essential elements of burglary include the intent to commit a specific crime, the jury instructions must also identify the specific crime the accused intended to commit. Id. at (¶ 17). The jury must not be allowed “to arbitrarily select some crime of which there was no proof, and use that nonexistent offense to convict [a defendant] of burglary.” Id.
¶ 14. Unless a defendant confesses, it is often extremely difficult to determine exactly what he intended to do when he broke and entered someone else’s home. As the supreme court has recognized:
*805 The State seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime. Intent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. [A defendant's intention is manifested largely by the things he does.
Dixon v. State, 240 So.2d 289, 290 (Miss.1970). Consequently, circumstantial evidence is adequate to prove that a defendant had felonious intent when he broke and entered a dwelling. Jackson v. State, 90 So.3d 597, 604 (¶27) (Miss.2012). A defendant’s felonious intent “is an issue of fact which falls within the exclusive province of the jury.” Id. Additionally, jurors are entitled to logically infer that a defendant broke and entered a home with the intent to commit larceny because “[l]aw-abiding citizens do not break, into the homes of people they do not know and rummage through their effects, then flee when their actions are discovered.” Id. at (¶ 30).
¶ 15. White cites no authority stating that reversible error is the unavoidable result when a circuit court does not unequivocally instruct a jury on the elements of the intended crime in a burglary trial. However, only in capital-murder cases is a circuit court required to instruct a jury on the elements of the legislatively specified underlying felony that elevates the murder to a capital offense. See id. Instead, the supreme court has held that a circuit court “should instruct the jury on the elements of the intended crime.... ” Conner v. State, 138 So.3d 143, 150 (¶ 16) (Miss.2014) (emphasis added). The circuit court is required to instruct the jury fairly — not perfectly — regarding “the applicable rules of law.” Id. at 149 (f 14). We review the jury instructions as a whole to determine whether the circuit court fulfilled its obligation. Id.
¶ 16. In Conner, the supreme court held that although the circuit court did not instruct the jury on the underlying intended crime for the burglary, the jury instructions as a whole adequately instructed the jury that it was required to find that the defendant “broke and entered the victim’s dwelling with the intent to steal.” Id. at 150-51 (¶ 16). Therefore, the supreme court affirmed the burglary conviction. Id. at 151 (¶ 16). During the prosecution’s closing argument in the present case, the prosecution argued that White most likely intended to steal the Inmans’ personal property. The evidence certainly supports that conclusion, since some of Newell’s tools were missing. The circuit court instructed the jury that to find White guilty of burglary, it must find that White “intended to commit larceny and/or assault” when he broke and entered the Inmans’ home. The jury instructions clearly identified the specific underlying crime that White intended to commit.
¶ 17. Additionally, the jury was, in fact, instructed regarding the elements of aggravated assault. The jury could have found that when White saw the Inmans’ vehicle approaching the carport, he went inside the storage room to arm himself to commit an assault in case he was discovered.[3] It is undisputed that the intruder
*806 severely beat Newell with a tool. The fact that the jury found White not guilty of aggravated assault is totally irrelevant to the issue of plain error in the jury instruction regarding the elements of burglary. It'is impossible to rationalize the jury’s inconsistent verdicts in this case. It defies logic that the jury concluded that White broke and entered the storage room with the intent to steal something or commit assault, but somebody else committed the aggravated assault. Whether it was an example of jury nullification or the jury’s belief that one felony conviction was simply enough, we will never know. Regardless, the inconsistent jury verdicts are of no concern. See Sanders v. State, 63 So.3d 497, 504 (¶ 20) (Miss.2011). White relied solely on misidentification and an alibi as his defenses. When reviewing the legal sufficiency of a burglary conviction, it is totally unnecessary to determine whether there was sufficient evidence to find that the accused actually committed the underlying offense.
¶ 18. The plain-error doctrine requires proof of an error that resulted in a “manifest miscarriage of justice.” Blunt v. State, 55 So.3d 207, 211 (¶ 16) (Miss.Ct.App.2011). The plain-error doctrine has also been construed to include any error that “seriously affects the fairness, integrity[,] or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). If the instructions fairly state the law of the case and create no injustice, then we will not -find reversible error. Wilson v. State, 72 So.3d 1145, 1156 (¶ 31) (Miss.Ct.App.2011) (citations omitted). Taking the jury instructions as a whole, the circuit court instructed the jury on all of the statutory elements of dwelling-house
burglary, including the specific underlying offenses. Moreover, the jury was instructed on the essential elements of aggravated assault. It was undisputed that the intruder stole the Inmans’ property and assaulted Newell. As stated above, White’s defenses were misidentification and alibi. There is no manifest miscarriage of justice because the circuit -court did not sua sponte instruct the jury regarding the specific elements of larceny. We decline to reverse the trial judge on an issue never presented to him. Based on the facts of this case, we find no plain error.
¶ 19. Additionally, it appears that the supreme court has recently receded from its rather emphatic statement in Bolton, 113 So.3d at 544 (¶4), that the “failure] to instruct the jury on all of the essential elements of [a crime] ... constitutes plain error.” See also Harrell, 134 So.3d at 275 (¶ 30) (“[I]t is always and in every’ case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element.”). It is unclear whether harmless error may result from the failure to instruct the jury regarding the elements of the underlying criminal intent of a dwelling-house burglary. In Jones v. State, 164 So.3d 1009 (Miss.Ct.App.2013) (final mandate issued Sept. 4, 2014), this Court affirmed a sexual-battery conviction even though the jury was not instructed that it must find that the defendant was at least twenty-four months older than the child victim. It was patently obvious to the jury that the' defendant was decades older than the eight-year-old victim. Id. The three opinions in Jones discussed the fact that some precedent at the time supported a harmless-error analysis under the *807 circumstances.[4] This' Court denied rehearing in Jones on November 26, 2013. On February 20, 2014, the supreme court granted certiorari. Jones v. State, 132 So.3d 579 (Miss.2014).
¶20. However, a majority of the supreme court subsequently found that “there is no need for further review, and that the [w]rit of [c]ertiorari should be dismissed.” Jones v. State, 2012-CT-00374-SCT (Aug. 14, 2014). Presiding Justice Dickinson,'joined by three others, issued a separate written 'statement and included a proposed opinion: Id. The proposed opinion stated that the defendant— through his counsel — had waived his right to havé the jury instructed on the essential element of the difference between his age and the victim’s when the defendant withdrew his correctly worded proposed jury instruction. Id. at (¶ 24). Whether based on harmless error or waiver, the result is the same — Jones’sconvictiori was affirmed. Just as the difference between Jones’s age and the victim’s was patently obvious to the jury, it was obvious to the jury in this case that the intruder intended to either steal something from the Inmans or commit an assault. Assuming for the' sake of discussion that the circuit court erred in this case, that error must likewise be harmless and/or waived. We find no merit to this issue.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY-AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED, ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUIT-MAN COUNTY.
LEE, C.J., GRIFFIS, P.J., CARLTON, MAXWELL AND JAMES, JJ., CONCUR. FAIR, J., DISSENTS WITH SEPARATE WRITTEN OPINION, ■ JOINED BY IRVING, P.J., BARNES AND ISHEE, JJ.

. The jury found that White was not guilty of aggravated assault.

. After an orAopedic physician set the bone, Newell wore a sling for monAs. He later received extensive therapy.

. See Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); Bolton, 113 So.3d at 544 (¶ 4); Rogers v. State, 95 So.3d 623, 632 (¶30) (Miss.2012);. Berry v. State, 728 So.2d 568, 571 (¶ 6) (Miss.1999).