# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-02132-SCT

*RICHARD WHITE a/k/a TONEY BUCK a/k/a*
*RICHARD DELAINE WHITE*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2013 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| TRIAL COURT ATTORNEYS: | LESLIE FLINT |
| | JAMIE BANKS |
| | WILBERT L. JOHNSON |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH PRIDGEN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Richard White was convicted of burglary of a dwelling. The jury was instructed it could find White guilty of burglary of a dwelling if it found he broke and entered Newell and Johanna Inman's home "with the intent to commit the crime of larceny and/or assault therein." While the jury was instructed on the elements of aggravated assault, it was not

given any instruction on the definition of larceny. On appeal, a divided Court of Appeals affirmed his conviction. *White v. State*, No. 2013-KA-02132-COA, 2015 WL 3954218, at *1 (Miss. Ct. App. June 30, 2015). We granted White's petition for writ of certiorari.

¶2. Consistent with this Court's recent decision in *Windless v. State*, 185 So. 3d 956 (Miss. 2015), we affirm the judgment of the Court of Appeals as well as the trial court's judgment and sentence.

## FACTS AND PROCEDURAL HISTORY

[Newell and Johanna Inman lived] in Lambert, Mississippi, . . . in Quitman County. On Sunday, January 29, 2012, Newell and Johanna drove to Okolona, Mississippi, to visit a sick relative in the hospital. It was dark when they arrived home a little after 7 p.m. Newell was driving, and Johanna was in the front passenger's seat.

As they approached their home, Newell and Johanna both noticed that a light was on in one of the two storage rooms connected to their carport. The doors to the storage rooms were shut and unlocked. Newell thought that Johanna had left the light on, and Johanna thought that Newell was responsible for the light. As Johanna was exiting the parked car, Newell asked her to turn off the light in the storage room, which was immediately to her right. Johanna opened the storage-room door just enough to reach the light switch inside. But the light was already off. Johanna turned the light back on.

Johanna was surprised by an intruder in her storage room. His hands were behind his back, as though he was hiding a weapon. According to Johanna, the intruder was standing in a "parade rest" or "at ease" military posture. Johanna screamed for Newell.

As sixty-five-year-old Newell rushed around the car to help Johanna, the intruder tried to escape. Newell swung at him – and missed. The significantly younger intruder pummeled Newell with something metallic, knocking Newell to his knees and shattering his glasses. Newell's head was severely lacerated, and his right arm was broken.[] The intruder fled around the carport and across the yard. Regaining his balance, Newell briefly tried to chase the intruder. Newell had to stop when blood from the lacerations on his head began to obscure his vision.

While driving to the emergency room, Johanna called 911. At that time, Johanna did not recognize the intruder. But Newell did from the many times

2

he had seen him around town. However, Newell did not know the intruder's name.

The next day, the Inmans positively identified White as the intruder. They recognized him from a photograph that was presented by law enforcement. Johanna also showed law enforcement the undisturbed metal file that she had found in the front yard. Newell inventoried the storage room and discovered that he was missing a hammer, a pair of Channellock pliers, at least two files, and some of his screwdrivers. Law-enforcement officers found a fingerprint on a box in the storage room where the intruder had been hiding. A fingerprint examiner from the Mississippi Crime Laboratory later testified that the fingerprint matched the middle finger on White's left hand. Newell and Johanna both testified during White's trial. They each identified White as the intruder.

White was questioned after he was arrested. He denied any involvement in the burglary. At trial, White testified that he was at his home in Lambert with family when the crimes occurred. But he did not call any witnesses to corroborate his claimed alibi.

In rebuttal, the prosecution called Charlie Booker Jr., who lived close to the Inmans' residence. Booker testified that White had been at his house late on the afternoon of the burglary. White had stopped by to see Booker's father. White left on foot after Booker told him that his father was not at home.

*White*, 2015 WL 3954218, at **1-2.

¶3.     At trial, the court gave the following jury instruction regarding the elements of the charged crimes:

In Count I, if you believe from the evidence in this case beyond a reasonable doubt that:

1.      On or about January 29, 2012, RICHARD WHITE AKA "TONEY BUCK" did unlawfully, wilfully, feloniously break and enter the dwelling house of Newell Inman and /or Johanna Inman, and

2.      said dwelling house was located at 213 10th Street in Lambert, Mississippi, and

3.      said break and enter was with the intent to commit the crime of larceny and/or assault there,

3

then you shall find the defendant guilty of burglary of a dwelling in Count I.

. . .

In Count II, if you believe from the evidence in this case beyond a reasonable doubt that:

1. That on or about January 20, 2012, the defendant RICHARD WHITE AKA "TONEY BUCK" did unlawfully, feloniously, purposely or knowingly cause bodily injury to Newell Inman,

2. with a flat iron or metal file or like object, a means likely to produce serious bodily harm,

then you shall find the defendant guilty of aggravated assault in Count II.

The instructions did not define larceny.

¶4. The jury found White guilty of burglary but acquitted him of aggravated assault. White appealed, arguing the trial court had erred in failing to instruct the jury regarding the elements of larceny and assault. In affirming White's conviction, a majority of the Court of Appeals found that the jury had been instructed on the elements of aggravated assault, and also found the jury had been fairly instructed on the underlying offenses of burglary, because "[i]t was undisputed that the intruder stole the Inmans' property and assaulted Newell." *White*, 2015 WL 3954218, at *4.

¶5. In dissent, Judge Fair argued that the majority affirmed the convictions because evidence of theft and assault existed, but said this Court has not drawn an evidentiary distinction when requiring that the jury be instructed on the intent requirement for burglary. *Id.* at *7 (Fair, J., dissenting). Judge Fair concluded that the jury instructions did not fairly

4

instruct the jury on the intent requirement for burglary in conformity with this Court's precedent. **Id.**

¶6.    White petitioned this Court for certiorari, which we granted to address the issue of whether the trial court failed to fairly instruct the jury on the applicable law.

**ANALYSIS**

¶7.    This Court must review jury instructions as a whole to ascertain whether the jury was fully and fairly instructed regarding the applicable law. ***Conner v. State***, 138 So. 3d 143, 149 (Miss. 2014).  "We will not find error if the instructions fairly, though not perfectly, announce the applicable rules of law." **Id.**

¶8.    Because White failed to object at trial to the jury instruction complained of on appeal, error–if any–on the trial court's part regarding the jury instruction at issue is subject to plain-error review. ***Windless***, 185 So. 3d at 961-62 (The plain-error doctrine requires the finding of not only an error, but one that resulted in a 'miscarriage of justice' affecting the defendant's fundamental rights.").

¶9.    In ***Windless***, the defendant was convicted of capital murder with the underlying felony of burglary. ***Id***. at 959.  The trial court instructed the jury on the essential elements of both the principal offense of capital murder and the underlying felony of burglary. ***Id***. But while the trial court identified larceny as the crime Windless intended to commit vis-vis the burglary, it did not define the offense of larceny. ***Id***. Windless did not object at trial to the complained-of jury instruction. ***Id***. at 960.

5

¶10.     Noting first that Windless's claimed error on appeal was subject to plain-error review only, due to failure to preserve the error at trial, this Court found no miscarriage of justice affecting Windless's fundamental rights. *Id*. at 961-62. *Windless* reiterated that larceny is commonly understood to connote stealing or theft. *Id*. at 962 (citing *Conner*, 138 So. 3d at 150). The State had submitted sufficient evidence for the jury to find that "Windless feloniously broke into and entered the victim's house with the intent to steal." *Id*. at 962. And the jury instructions fairly informed Windless's jury of the applicable rules of law. Accordingly, this Court found no merit to Windless's argument. *Id*.

¶11.     Here, White was on trial for burglary, not larceny. As *Windless* reiterated, "[t]he elements of burglary are (1) 'breaking and entering the dwelling house or inner door of such dwelling house of another' (2) 'with the intent to commit *some crime* therein[.]'" *Windless*, 185 So. 3d at 960-61 (quoting Miss. Code Ann. § 97-17-23(1) (Rev. 2014)) (emphasis added). The crime of burglary "does not contain two separate and distinct 'subcrimes[.]'" *Id*. at 961 (quoting *Booker v. State*, 716 So. 2d 1064, 1067-68 (Miss. 1998)). "Rather, the *intent* to commit some crime, be it a felony or misdemeanor, is simply an element of the crime of burglary." *Id*. (quoting *Booker*, 716 So. 2d at 1068) (emphasis maintained). The State is not obligated to prove that the accused actually committed the underlying offense of burglary. *Daniels v. State*, 107 So. 3d 961, 964 (Miss. 2013). "Only the intent need be proven to establish the second element of the crime of burglary." *Windless*, 185 So. 3d at 961 (quoting *Moore v. State*, 344 So. 2d 731, 735 (Miss. 1977)).

6

¶12. Complying with this Court's precedent, the trial court identified the specific crime White's indictment alleged he intended to commit, when it instructed the jury on the elements of burglary at the conclusion of White's trial. *Daniels*, 107 So. 3d at 964. In defining intent, the trial court used the word "larceny" as a shorthand statement of its definition, i.e., to steal, take and carry away the goods of another with the intent to deprive the owner of his or her goods permanently and to convert same to the use of the taker.

¶13. As this Court found to be the case in *Windless*, White's jury did not need a formal definition of the term "larceny" to understand its meaning and to apply that meaning to the evidence presented in this case. *See Windless*, 185 So. 3d at 962 ("larceny is commonly understood to connote stealing or theft"). The State clearly met its burden on the second element, based upon the evidence presented at trial. The evidence showed that, after White that left Newell and Johanna's premises, Newell inventoried the storage room where White had been discovered by the Newells. Newell testified he was missing a hammer, a pair of pliers, at least two files, and some screwdrivers.

¶14. Consistent with *Windless*, use of the word "larceny" as it is commonly used and understood by the general public was sufficient in this case to define for the jury the requisite intent needed to support a conviction of burglary.

## CONCLUSION

¶15. For these reasons, we affirm the judgment of the Court of Appeals affirming White's burglary conviction as well as the judgment and sentence of the Quitman County Circuit Court.

7

¶16. **COUNT I: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. APPELLANT SHALL PAY FULL RESTITUTION TO THE VICTIM, IF ANY.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KITCHENS, J. MAXWELL, J., NOT PARTICIPATING.**

**KING, JUSTICE, DISSENTING:**

¶17. Because I believe that the jury should have been instructed on the elements of the underlying offense of larceny in order to find that White had the requisite intent, I respectfully dissent.

¶18. The crime of burglary of a dwelling is committed by "breaking and entering the dwelling house or inner door of such dwelling house of another . . . with intent to commit some crime therein[.]" Miss. Code Ann. § 97-17-23(1) (Rev. 2014). The jury must be instructed as to some specific crime that the State alleges the defendant intended to commit. *Daniels v. State*, 107 So. 3d 961, 964 (Miss. 2013). It is true that the State does not have to prove every element of the intended crime to prove burglary. *Id.* However, in order to prove that a defendant *intended* to commit a specific crime, the jury must have some lodestar by which it can navigate in order to ascertain what that intended crime entails. Ideally, that lodestar consists of an instruction describing the elements of the intended crime.

¶19. In *Conner*, this Court found that trial courts "*should* instruct the jury on the elements of the intended crime in a burglary trial." *Conner v. State*, 138 So. 3d 143, 150 (Miss. 2014)

8

(emphasis added). However, the Court noted that jury instructions must fairly, but not perfectly, instruct the jury on the applicable law. *Id.* In addition to a burglary instruction that failed to list the elements of larceny, the trial court in *Conner* gave an instruction that "[a]n inference of the intent to steal may arise from proof of the breaking and entering." *Id.* at 149. Because the Court deemed that an intent to commit larceny (an element of burglary) was similar to the intent to steal on which the jury was explicitly instructed, the Court found that the jury was fairly instructed on the applicable law. *Id.* at 149-50.

¶20. In the case at hand, the jury instructions informed the jury that it should find White guilty of burglary if he broke and entered the Inman's house with the intent to commit larceny or assault. White was also charged with, and the jury was separately instructed on, aggravated assault. Because the jury instructions contained every element of aggravated assault, the jury was fairly informed regarding the applicable law of assault, pursuant to our holding in *Conner*, and could thus fairly ascertain whether White possessed the requisite intent to assault required for a burglary conviction. However, the jury was not instructed on the elements of larceny, nor was any sort of "intent to steal" instruction given. Unlike in *Conner*, the jury in this case had utterly no basis upon which to determine whether White intended to commit larceny. In this case, the Court of Appeals relied on, and the majority does not repudiate, the idea that evidence of an intent to commit larceny suffices. But Judge Fair's dissent was correct that evidence of the element of a crime does not replace a correct jury instruction on such element. Taken to its logical conclusion, such an argument could allow mere evidence of the crime to replace a jury instruction on any element of a crime. For

9

example, had the State introduced evidence of breaking and entering, the Court of Appeals' conclusion would allow it to forego actually instructing the jury that it must find that a defendant broke and entered a dwelling, merely because it introduced evidence to that effect.

¶21. The majority relies on *Windless v. State* for its proposition that the mere mention of larceny sufficiently instructs the jury in this case. *Windless v. State*, 185 So. 3d 956 (Miss. 2015). *Windless*, a plurality opinion, was a capital murder case. *Id.* The plurality determined that it was not plain error to fail to instruct the jury on the definition of larceny, which, in that case, was the intended offense to the underlying offense of burglary to the primary offense of capital murder. *Id.* This case is simply more akin to *Conner*. And a jury should know the elements of larceny under Mississippi law in order to possess the ability to find beyond a reasonable doubt that a defendant intended to commit larceny. *Windless*, 185 So. 3d at 963 (Dickinson, P.J., dissenting). "[T]he crime of larceny is not universal." *Id.* (Dickinson, P.J., dissenting). "The abridged ninth edition of Black's Law Dictionary defines fifteen different kinds of larceny, each with its own definition." *Id.* at 963-64 (Dickinson, P.J., dissenting). Mississippi has approximately fourteen statutes covering various crimes of larceny. *Id.* at 964 (Dickinson, P.J., dissenting) (citing Miss. Code Ann. §§ 97-17-41 to 97-17-64 (Rev. 2014)). Thus, according to this Court's pronouncement in *Conner*, a jury should be fairly instructed on the elements of the intended crime in order to determine beyond a reasonable doubt whether the requisite intent existed. This Court appears to overrule *Conner* with today's decision.

¶22.　Because it was not instructed upon any basis whatsoever on which it could fairly determine whether White possessed the requisite intent to commit larceny, the jury was not fully and fairly instructed on the elements of burglary.　Therefore, I would reverse White's conviction, because the jury was not fairly instructed on the applicable law; thus he was deprived of his right to have a jury determine whether every element of the offense of burglary was proven beyond a reasonable doubt.

**DICKINSON, P.J., AND KITCHENS, J., JOIN THIS OPINION.**