BEAM, Justice,
for the Court:
¶ 1. Richard White was convicted of burglary of a dwelling. The jury' was instructed it could find White guilty of burglary of a dwelling if it found he broke and entered Newell and Johanna Inman’s' home “with the intent to commit the crime of larceny and/or assault therein.”-'. While the jury was instructed on the elements of aggravated assault, it was not given any instruction on the definition of larceny. On appeal, a divided Court of Appeals affirmed his conviction. White v. State, 195 So.3d 801, 802-03, 2015 WL 3954218, at *1 (Miss.Ct.App.2015). We granted White’s petition for writ of certiorari.
¶ 2. Consistent with this Court’s recent decision in Windless v. State, 185 So.3d 956 (Miss.2015), we affirm the judgment of the Court - of Appeals as well as the trial court’s judgment and sentence.
FACTS AND PROCEDURAL HISTORY
[Newell and Johanna Inman lived] in Lambert, Mississippi, ... in Quitman County. On Sunday, January 29, 2012, Newell and Johanna drove to Okolona, Mississippi, to visit a sick relative in the hospital. It was dark when they arrived home a little after 7 p.m. Newell was driving, and Johanna was in the front passenger’s seat.
As they approached their home, New-ell and Johanna both noticed that a light was on in one.of the two storage rooms connected to their carport. The doors to the storage rooms were shut and unlocked. Newell thought that Johanna had left the light on, and Johanna thought that Newell was responsible for the light. As Johanna was exiting the parked car, Newell asked her to turn off the light in the storage room, which was immediately to her right. Johanna opened the storage-room door just enough to reach the light switch inside. But the light was already off. Johanna turned the light back on.
Johanna was surprised by an intruder in her storage room. His hands were behind his back, as though he was hiding a weapon. According to Johanna, the intruder was standing in a “parade rest” or “at ease” military posture. Johanna screamed for Newell.
As sixty-five-year-old Newell rushed around the car to help Johanna, the intruder tried to escape. Newell swung at him — and missed. The significantly younger intruder pummeled Newell with something metallic, knocking Newell to his knees and shattering his glasses. Newell’s head was severely lacerated, and his right arm was broken.[ ]' -The *767 intruder fled around the carport and across the yard. Regaining his balance, Newell briefly tried to chase the intruder. Newell had to stop when blood from the lacerations on his head began to obscure his vision.
While driving to the emergency room, Johanna called -911. At that time, Johanna did not recognize the intruder. But Newell did from the many times he had seen him around town. However, Newell did not know the intruder’s name.
The next day, the Inmans positively identified White as the intruder. They recognized him from a photograph that was presented by law enforcement. Johanna also showed law enforcement the undisturbed metal file that she had found in the front yard. Newell inventoried the storage room and discovered that he was missing a hammer, a pair of Channellock pliers, at least two files, and some of his screwdrivers. Law-enforcement officers found a fingerprint on a box in the storage room where the intruder had been hiding. A fingerprint examiner from the Mississippi Crime Laboratory later testified that the fingerprint matched the middle finger on White’s left hand. Newell and Johanna both testified during White’s trial. They each identified White as the intruder.
White was questioned after he was arrested. He denied any involvement in the burglary. At trial, White testified that he was at his home in Lambert with family when the crimes occurred. ■ • But he did not call any witnesses to corroborate his claimed alibi.
In rebuttal, the prosecution called Charlie Booker Jr., who lived close to the Inmans’ residence. Booker testified that White had been at his house late on •the afternoon of the burglary. White had stopped by to see Booker’s father. White left on foot after Booker told him that his father was not at home.
White, 195 So.3d at 802-04, 2015 WL 3954218, at * *1-2. ‘
¶ 3. At trial, the,court gave the following jury instruction regarding the elements of the charged crimes:
In Count I, if. you believe from the evidence in this case beyond a reasonable doubt that:
1. .On or about January 29, 2012, RICHARD WHITE AKA “TONEY BUCK” did unlawfully, wilfully, felo-niously break and enter the dwelling house of Newell Inman and /or Jo- . hanna Inman, and
2. said- dwelling house was located at 213 10th Street in Lambert, Mississippi; and
3. said-break and enter was with the intent to commit the crime of larceny and/or assault‘there, then you shall find the defendant guilty of burglary of a dwelling in Count I.
[[Image here]]
In Count II, if you believe from the evidence in this case beyond a reasonable doubt that: ■ ■
1. That on or about January 20, 2012, the defendant RICHARD WHITE AKA “TONEY BUCK” did unlawfully, feloniously, purposely or knowingly cause bodily injury to Newell Inman,
2. with a flat iron or metal file or like object, a means likely to produce serious bodily harm,
then you, shall find the defendant guilty of aggravated assault in Count II.
The instructions did not define larceny.
¶ 4. The jury found White guilty ■ of burglary but acquitted him of aggravated assault. White appealed, arguing the trial court had' erred in failing to instruct the *768 jury regarding the elements of larceny and assault. In affirming White’s conviction, a majority of the Court of Appeals found that the jury had been instructed on the elements of aggravated assault, and also found the jury had been fairly instructed on the underlying offenses of burglary, because “[i]t was undisputed that the intruder stole the Inmans’ property and assaulted Newell.” White, 195 So.3d at 805-07, 2015 WL 3954218, at *4.
¶ 5. In dissent, Judge Fair argued that the majority affirmed the convictions because evidence of theft and assault existed, but said this Court has not drawn an evi-dentiary distinction when requiring that the jury be instructed on the intent requirement for burglary. Id. at 809, 2015 WL 3954218 at *1 (Fair, J., dissenting). Judge Fair concluded that the jury instructions did not fairly instruct the jury on the intent requirement for burglary in conformity with this Court’s precedent. Id.
¶ 6. White petitioned this Court for cer-tiorari, which we granted to address the issue of whether the trial court failed to fairly instruct the jury on the applicable law.
ANALYSIS
¶7. This Court must review jury instructions as a whole to ascertain whether the jury was fully and fairly instructed regarding the applicable law. Conner v. State, 138 So.3d 143, 149 (Miss.2014). “We will not find error if the instructions fairly, though not perfectly, announce the applicable rules of law.” Id.
¶ 8. Because White failed to object at trial to the jury instruction complained of on appeal, error — if any — on the trial court’s part regarding the jury instruction at issue is subject to plain-error review. Windless, 185 So.3d at 961-62 (“The plain-error doctrine requires the finding of not only an error, but one that resulted in a ‘miscarriage of justice’ affecting the defendant’s fundamental rights.”).
¶9. In Windless, the defendant was convicted of capital murder with the underlying felony of burglary. Id. at 959. The trial court instructed the jury on the essential elements of both the principal offense of capital murder and the underlying felony of burglary. Id. But while the trial court identified larceny as the crime Windless intended to commit vis-vis the burglary, it did not define the offense of larceny. Id. Windless did not object at trial to the complained-of jury instruction. Id. at 960.
¶ 10. Noting first that Windless’s claimed error on appeal was subject to plain-error review only, due to failure to preserve the error at trial, this Court found no miscarriage of justice affecting Windless’s fundamental rights. Id. at 961-62. Windless reiterated that larceny is commonly understood to connote stealing or theft. Id. at 962 (citing Conner, 138 So.3d at 150). The State had submitted sufficient evidence for the jury to find that “Windless feloniously broke into and entered the victim’s house with the intent to steal.” Id. at 962. And the jury instructions fairly informed Windless’s jury of the applicable rules of law. Accordingly, this Court found no merit to Windless’s argument. Id.
¶ 11. Here, White was on trial for burglary, not larceny. As Windless reiterated, “[t]he elements of burglary are (1) ‘breaking and entering the dwelling house or inner door of such dwelling house of another’ (2) ‘with the intent to commit some crime therein[.]’” Windless, 185 So.3d at 960-61 (quoting Miss.Code Ann. § 97-17-23(1) (Rev.2014)) (emphasis added). The crime of burglary “does not contain two separate and distinct ‘sub- *769 crimes[.]’ ” Id. at 961 (quoting Booker v. State, 716 So.2d 1064, 1067-68 (Miss.1998)). “Rather, the intent to commit some crime, be it a felony or misdemeanor, is simply an element of the crime of burglary.” Id. (quoting Booker, 716 So.2d at 1068) (emphasis maintained). The State is not obligated to prove that the accused actually committed the underlying offense of burglary. Daniels v. State, 107 So.3d 961, 964 (Miss.2013). “Only the intent need be proven to establish the second element of the crime of burglary.” Windless, 185 So.3d at 961 (quoting Moore v. State, 344 So.2d 731, 735 (Miss.1977)).
¶ 12. Complying with this Court’s precedent, the trial court identified the spécific crime White’s indictment alleged he intended to commit, when it instructed the jury on the elements of burglary at the conclusion of White’s trial. Daniels, 107 So.3d at 964. In defining intent, the trial court used the word “larceny” as a shorthand statement of its definition, i.e., to steal, take and carry away the goods of another with the intent to deprive the owner of his or her goods permanently and to convert same to the use of the taker.
¶ 13. As this Court found to be the case in Windless, White’s jury did not need a formal definition of the term “larceny” to understand its meaning and to apply that meaning to the evidence presented in this case. See Windless, 185 So.3d at 962 (“larceny is commonly understood to connote stealing or theft”). The State clearly met its burden on the second element, based upon the evidence presented at trial. The evidence showed that, after White that left Newell and Johanna’s premises, Newell inventoried the storage room where White had been discovered by the Newells. Newell testified he was missing a hammer, a pair of pliers, at least two files, and some screwdrivers.
¶ 14. Consistent with Windless, use of the word “larceny” as it is commonly used and understood by the general public was sufficient in this case to define for the jury the requisite intent needed to support a conviction of burglary.
CONCLUSION
1Í15. For these reasons, we affirm the judgment, of the Court of Appeals affirming White’s burglary conviction as well as the judgment and sentence of the Quitman County Circuit Court.
¶ 16. COUNT I: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. APPELLANT SHALL PAY FULL RESTITUTION TO THE VICTIM, IF ANY.
WALLER, C.J., RANDOLPH, P.J., LAMAR AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION ■ JOINED BY DICKINSON, P.J., AND KITCHENS, J. MAXWELL, J., NOT PARTICIPATING.