742 So.2d 1205 (1999)
Issac EVANS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01217-COA.
Court of Appeals of Mississippi.
June 29, 1999.
*1206 John W. Chapman, Brandon, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND KING, JJ.
DIAZ, J., for the Court:
¶ 1. Issac Evans appeals an April 29, 1997 order of the Circuit Court of Rankin County sentencing him as an habitual offender to life in prison for armed robbery by use of a deadly weapon pursuant to *1207 Miss.Code Ann. § 97-3-7(2)(Rev.1994). He now asserts that his right to a speedy trial was violated because more than fifteen months elapsed between his arrest and trial; he did not receive a fair and impartial trial because he was brought into the courtroom, in the presence of the jury, wearing shackles and chains; the habitual offender portion of the indictment followed the "against the peace and dignity of the state" language in violation of art. 6, § 169 of the Mississippi Constitution; the court violated Evans' right of confrontation by refusing to allow a line-up; and the verdict was against the overwhelming weight of the evidence. Finding no merit to these assignments of error, we affirm the ruling of the Rankin County Circuit Court.

FACTS
¶ 2. On November 1, 1995, Ora Mae Triplett stopped at Cash's Bait Shop in Flowood, Mississippi to buy some minnows. She got into her car and started to drive away. Suddenly, Evans, whom she had noticed looking "real hard" at "Papaw," the man who ran the bait shop, emerged from the back seat of her car with a "hatchet hammer" in his hand. He told her to keep driving and threatened to kill her if she did not. Triplett somehow grabbed the weapon and slammed on her brakes. Evans, who had started shaking and trembling all over, grabbed Triplett's purse and ran from the car. He jumped into an old white pick-up truck where another man was waiting for him. The two men drove away.
¶ 3. Kris Miller saw a man jump from Triplett's car into the white truck. Miller and his co-worker followed the white truck until it slid off the road. The two men left the truck and were seen running into the woods. Miller then called police from a cellular phone. Police searched the woods, where Evans was apprehended and taken into custody.
¶ 4. Evans was indicted on November 16, 1995, by the Grand Jury of the Rankin County Circuit Court and charged with armed robbery as an habitual offender. On February 20, 1997, a jury found Evans guilty as charged. The circuit judge sentenced him to life in prison without the possibility of parole.

DISCUSSION

I. WHETHER EVANS'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BECAUSE OF THE TIME THAT ELAPSED BETWEEN HIS INDICTMENT AND TRIAL
¶ 5. Evans was arrested on November 1, 1995 and waived arraignment on January 5, 1996. His trial began on February 19, 1997. In his first assignment of error, he asserts that because of the time which elapsed before his trial, he was denied his right to a speedy trial pursuant to the sixth and fourteenth amendments to the United States Constitution, art. 3, § 26 of the Mississippi Constitution of 1890 and Miss.Code Ann. § 99-17-1 (Rev.1994).

A. Constitutional Right to a Speedy Trial
¶ 6. "The constitutional right to a speedy trial attaches at the time a person is effectively accused of a crime." Skaggs v. State, 676 So.2d 897, 900 (Miss.1996); Noe v. State, 616 So.2d 298, 300 (Miss. 1993). To determine whether a criminal defendant's right to a speedy trial has been violated, we balance the factors set forth by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Thus, we consider: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to a speedy trial, and (4) whether the defendant has been prejudiced by the delay. Id.
¶ 17. The length of the delay must be presumptively prejudicial in order to trigger further inquiry. Jaco v. State, 574 So.2d 625, 630 (Miss.1990). A delay of eight months has been found to be presumptively prejudicial. Smith v. State, *1208 550 So.2d 406, 408 (Miss.1989). In Evans' case, 476 days, more than fifteen months, elapsed between his arrest and trial. This factor alone does not mandate reversal; rather, it requires that we examine closely the remaining factors. Handley v. State, 574 So.2d 671, 676 (Miss.1990).
¶ 8. "The [S]tate bears the risk of non-persuasion regarding the reasons for delay and must show whether the defendant caused the delay or that good cause existed for the delay." Fleming v. State, 604 So.2d 280, 299 (Miss.1992). Pursuant to a joint motion, the circuit court entered an order on June 19, 1996, continuing the case until September 12, 1996 for good cause so that Evans and the State might continue plea negotiations. "Continuances that are attributed to the defendant stop the running of the clock and are deducted from the total number of days before trial." Vickery v. State, 535 So.2d 1371, 1375 (Miss.1988). Subtracting the 86-day continuance attributable to the joint motion reduces the time before Evans' trial to 390 days. The clock began to run again on September 12, 1996 until October 2, 1996, when an order continuing the case until February 19, 1997 for good cause was entered because the trial judge was ill. The case ultimately was tried before a jury on February 19 and 20, 1997.
¶ 9. Evans did not raise the speedy trial issue until his motion to dismiss was made on the day of the trial. While an accused is under no duty to bring himself to trial, "`he gains far more points under this prong of the Barker test where he has demanded a speedy trial.'" Perry v. State, 637 So.2d 871, 875 (Miss.1994)(quoting Jaco v. State, 574 So.2d 625, 632 (Miss. 1990)). This factor, therefore, does nothing to strengthen Evans' speedy trial claim.
¶ 10. Looking next at whether Evans was prejudiced by the delay in his trial, we find that he asserts only that Mrs. Triplett's recollection would have been fresher and she would not have "misidentified Evans" had he been tried more promptly. However, Evans does not allege any particular problem Mrs. Triplett had in identifying him as the man who attacked her with the "hammer hatchet" and took her purse. Moreover, Ms. Triplett's testimony was corroborated by other witnesses. It cannot be said, therefore, that his defense was prejudiced in any way by the delay.
¶ 11. None of the Barker factors weigh particularly heavily either in Evans' favor or against the State. Generally, we will reject a defendant's speedy trial claim when "the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice." Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994). In this case, the delay was neither intentional nor especially long and there has been no showing of prejudice. Accordingly, we reject Evans' constitutional speedy trial claim.

B. Statutory Right to a Speedy Trial
¶ 12. Evans further asserts that his statutory right to a speedy trial was violated. There was a 410-day lapse between his waiver of arraignment on January 5, 1996 and his February 19-20, 1997 trial. Subtracting the 86-day continuance the parties requested to pursue plea negotiations, that time is reduced to 324 days. The time further is reduced to 185 days by the 139-day continuance granted because of the judge's illness. Miss.Code Ann. § 99-17-1 provides that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy days after the accused has been arraigned." A finding of good cause will be left undisturbed where there is substantial credible evidence in the record from which it could have been made. McNeal v. State, 617 So.2d 999, 1007 (Miss.1993). In this case, as discussed supra, the circuit court found that both continuances granted in Evans' trial were for good cause. There is substantial evidence in the record *1209 to support that finding. We therefore find no merit to his statutory speedy trial claim.

II. WHETHER EVANS WAS UNABLE TO RECEIVE A FAIR AND IMPARTIAL TRIAL BECAUSE HE WAS BROUGHT INTO THE COURTROOM WHERE THE JURY WAS SEATED WEARING SHACKLES AND CHAINS
¶ 13. Evans next alleges that he was brought into the courtroom, in the presence of the jury, wearing shackles and chains, thus denying him a fair and impartial trial. The record, however, provides no support for his assertion. No mention was made of the alleged incident until the motion for a new trial. In Booker v. State, 716 So.2d 1064 (Miss.1998), where the defendant argued that he was seen by potential jurors in shackles and chains, the supreme court noted the absence of evidence in the record to support his assertion on appeal and stated that "[t]his Court will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record." Id. at 1070. We, likewise, cannot rule on a matter not properly made part of the record before us.

III. WHETHER EVANS WAS INCORRECTLY SENTENCED BECAUSE THE HABITUAL OFFENDER PORTION OF THE INDICTMENT FOLLOWED THE REQUIRED ENDING OF "AGAINST THE PEACE AND DIGNITY OF THE STATE," IN VIOLATION OF ART. 6, § 169 OF THE MISSISSIPPI CONSTITUTION.
¶ 14. Evans claims he was sentenced in violation of art. 6, § 169 of the Mississippi Constitution of 1890 because the habitual offender portion of the indictment followed the required "against the peace and dignity of the state" language. "[T]he question of whether an indictment is fatally defective is an issue and deserves a relatively broad standard of review...." Peterson v. State, 671 So.2d 647, 652 (Miss. 1996). The record reflects that the language "against the peace and dignity of the state" is first found at the end of each count of the indictment against Evans. That language is repeated at the conclusion of Exhibit "A" to the indictment, the recitation of those convictions upon which Evans' habitual offender status is based. See McNeal v. State, 658 So.2d 1345, 1349 (Miss.1995)(failure to also include "against the peace and dignity of the state" at the end of habitual offender portion of the indictment fatal as to sentencing). We therefore find no violation of the constitutional requirement that all indictments shall conclude with the language "against the peace and dignity of the state."

IV. WHETHER EVANS' RIGHT TO CONFRONTATION WAS DENIED BY THE COURT'S REFUSAL TO ALLOW A LINE-UP
¶ 15. Evans' attorney made an more tenus motion for a pre-trial line-up on February 14, 1997. It was denied by the circuit court. On February 18, the day before trial, Evans filed a written motion for a pre-trial line-up as well as a motion to suppress Mrs. Triplett's out-of-court identification of him as well as any in-court identification she might be called upon to make. Citing no authority, Evans now argues that the circuit court violated his right to confrontation by refusing to allow a non-suggestive line-up. Given his failure to cite any authority, we are not obligated to consider the assignment of error. Drennan v. State, 695 So.2d 581, 585 (Miss.1997).

V. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 16. In his final assignment of error, Evans asserts that the jury's verdict was against the overwhelming weight of the evidence. When reviewing the sufficiency of the evidence supporting a jury verdict, we look at all of the evidence to determine whether a reasonable, hypothetical juror could find the defendant guilty *1210 beyond a reasonable doubt. Jackson v. State, 614 So.2d 965, 972 (Miss.1993). We accept the evidence which supports the verdict and give the State the benefit of all reasonable inferences flowing therefrom. Id.; Hammond v. State, 465 So.2d 1031, 1035 (Miss.1985). Unless we are convinced that the verdict is so contrary to the weight of the evidence that, if it is allowed to stand, it would sanction an unconscionable injustice, we will not reverse a trial judge's denial of a motion for a new trial. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). The verdict in this case is consistent with the evidence in the record, placing it beyond our authority to disturb.

CONCLUSIONS
¶ 17. Considering the factors set forth in Barker, there is no merit to Evans' assertion that his right to a speedy trial was violated. The continuances granted were for good cause, the delay was not egregious and Evans was not prejudiced. There is no evidence in the record to support Evans' allegation that he was seen by jurors in chains and shackles, thus denying his right to a fair trial. His assertion that he was entitled to a pre-trial line-up is not supported by any authority, taking it out of the purview of this Court. Moreover, inclusion of the language "against the peace and dignity of the state" at the end of the addendum to the indictment enumerating those prior convictions which lead to Evans' status as an habitual offender is sufficient to satisfy the dictates of art. 6, § 169 of the Mississippi Constitution. Finally, the evidence in the record supports the jury's verdict against Evans. Accordingly, we affirm his sentence and conviction.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF ARMED ROBBERY AS AN HABITUAL OFFENDER AND TO SERVE A SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO RANKIN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.