# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00547-SCT

*ANTHONY WINDLESS a/k/a ANTHONY
TERRELL WINDLESS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2014 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| TRIAL COURT ATTORNEYS: | BRENDA F. MITCHELL |
| | WILBERT LEVON JOHNSON |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY:  MOLLIE M. McMILLIN |
| |     GEORGE T. HOLMES |
| | WILBERT L. JOHNSON |
| ATTORNEY FOR APPELLEE: | JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION | AFFIRMED - 10/01/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     A Quitman County jury found Anthony Windless guilty of capital murder, and

Windless was sentenced to imprisonment for life without the possibility of parole. Windless

appeals his conviction, arguing that the trial court erred in instructing the jury and that he

received ineffective assistance of counsel. Finding no error, we affirm.

**FACTS & PROCEDURAL HISTORY**

¶2.     On February 26, 2011, Charles Presley drove from his home in Sledge, Mississippi, to Batesville to have lunch with his son. After lunch, Presley's son withdrew $100 from his bank account and gave the money to Presley so he could make an insurance payment. Presley then returned to his home. Later that afternoon, Presley's sister Charlie Mae Aaron, who lived next door to Presley, noticed that his car was in his driveway. She attempted to contact him by phone but got a busy signal.

¶3.     Charlie Mae called Presley's home phone and cell phone again early the next morning and received no answer. She then called her son Craig Aaron, who lived a few blocks away, to check on Presley. When Craig arrived at Presley's home he knocked on the door, but no one answered. Charlie Mae retrieved her key to Presley's home and brought it to Craig. When they entered Presley's home, they found Presley unresponsive and bloody on the floor, so they ran back to Charlie Mae's house and called the police.

¶4.     Investigator Kristopher Wingert with the Mississippi Bureau of Investigation was part of the team that performed the initial examination of the crime scene. Investigator Wingert found a broken window on the back side of Presley's home. He also noticed that the back door to the home was ajar. Inside the home, Wingert found Presley's body on the floor of his bedroom. The house was in disarray, and heavy blood spatter surrounded Presley.

¶5.     The police developed Anthony Windless as a suspect in Presley's death based on his involvement in a prior similar crime and the fact that he lived near Presley. Investigators then went to Craig's house, where Windless lived. Craig is also Windless's stepfather.

2

When they arrived, Craig met them in the driveway and gave them one of his jackets that Windless had worn the day before. The jacket had blood on it, which was determined to be Presley's through DNA testing. A bloody flashlight, a CD player, and a ski mask also were found in a garbage can outside of Windless's cousin's home, about a block away from Presley's home. The blood on the flashlight was matched to Presley, as well. Forensic analysts with the Mississippi Crime Laboratory later identified Windless's fingerprints throughout the crime scene.

¶6.    After receiving this evidence, the police arrested Windless. He initially denied having any involvement in the crime. However, after agreeing to take a polygraph test, Windless told investigators that he had been involved in Presley's death.[1] Windless broke into Presley's home and was ransacking the place looking for valuable items when Presley returned home. Windless grabbed a large flashlight from the bar in Presley's home and hid behind the front door. As Presley entered the front door, Windless struck him on the head with the flashlight. Windless struck Presley a total of twenty-three times with the flashlight, ultimately killing him. Windless then took the cash that Presley had withdrawn at the bank, as well as some jewelry, a CD player, and the flashlight, and fled the scene. The flashlight found at Windless's cousin's home was identified as the murder weapon.

¶7.    Windless was indicted for capital murder with the underlying felony of burglary. Trial commenced on March 10, 2014. At the conclusion of Windless's trial, the jury was given

_____

[1]Windless initially told the police that he and another man, Jemarcus Wallace, had been "smoking a blunt" alongside the railroad tracks when they decided to rob someone. The police later determined that Wallace had not been involved in the crime.

3

the following instruction on the elements of capital murder and the underlying felony of burglary:

> The defendant, ANTHONY WINDLESS, is charged by indictment with the crime of Capital murder.

> Capital Murder

> If you find from the evidence in this case beyond a reasonable doubt that:

> 1. On or about or between February 26, 2011, and February 27, 2011, Charles Presley, Jr. was a living human being, and

> 2. the defendant, Anthony Windless, in Quitman County, Mississippi, individually or while aiding and abetting and/or acting in concert with another, did unlawfully, wilfully and feloniously, without authority of law, and with or without the deliberate design to effect death, kill and murder Charles Presley, Jr.,

> 3. while engaged in the crime of burglary of a dwelling,

> then you shall find the defendant guilty of Capital Murder. As indicated, a verdict of capital murder requires that you find beyond a reasonable doubt that the defendant was engaged in the crime of burglary of a dwelling at the time of the alleged murder.

> To find that the defendant was engaged in the crime of burglary of a dwelling at the time of the alleged murder, you must find beyond a reasonable doubt that:

> 1. On or about or between February 26, 2011, and February 27, 2011, the defendant, Anthony Windless, in Quitman County, Mississippi, individually or while aiding and abetting and/or acting in concert with another, did unlawfully, wilfully and feloniously, break and enter the dwelling house of Charles Presley, Jr. [l]ocated at 251 Gin Street in Sledge, Mississippi, and

2.    said breaking and entering was done with the intent to commit the crime of larceny

If the State has failed to prove beyond a reasonable doubt any one or more of the elements of Capital Murder, including the charge of burglary of a dwelling, then you shall find the defendant not guilty of Capital Murder and you shall proceed to determine if the State has proved beyond a reasonable doubt that the defendant is guilty of the murder of Charles Presley, Jr. The distinction, or difference, between the crime of Capital Murder and the crime of Murder is the inclusion of the allegation of burglary of a dwelling.

Windless's attorney did not object to this instruction. The jury found Windless guilty of capital murder, and the trial court sentenced him to life imprisonment without the possibility of parole. Following the denial of his post-trial motions, Windless timely appealed his conviction to this Court, arguing that the trial court had erred in failing to instruct the jury on the elements of larceny as the "underlying offense" of burglary, and that he had received ineffective assistance of counsel.

## DISCUSSION

**I.    Whether the trial court erred in failing to instruct the jury on the elements of larceny as the "underlying offense" of burglary.**

¶8.    This Court reviews the grant or denial of jury instructions for an abuse of discretion. *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012) (citing *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010)). "When jury instructions are challenged on appeal, we do not review them in isolation; rather, 'we read them as a whole to determine if the jury was properly instructed.'" *Rubenstein v. State*, 941 So. 2d 735, 787 (Miss. 2006) (quoting *Milano v. State*, 790 So. 2d 179, 184 (Miss. 2001)). If the jury instructions, read as a whole, fairly announce the law of

the case and create no injustice, no reversible error will be found. *Harris v. State*, 861 So. 2d 1003, 1014 (Miss. 2003).

¶9. In this case, the jury was instructed on the essential elements of both the principal offense of capital murder and the underlying felony of burglary, as our law requires. *See Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996). In addition, the jury instructions specifically identified larceny as the crime Windless intended to commit vis-à-vis the burglary. *See Daniels v. State*, 107 So. 3d 961, 964 (Miss. 2013) (finding that the jury was not instructed properly on the elements of burglary, where the jury instructions failed to indicate the specific crime which the defendant intended to commit). Relying on *Harrell v. State*, 134 So. 3d 266 (Miss. 2014), Windless argues that the trial court also was required instruct the jury on the *elements* of the intended crime of larceny. He refers to larceny as "the underlying offense of burglary." In *Harrell*, the defendant was charged with capital murder with the underlying felony of robbery, but the jury was not instructed on the elements of robbery. *Id.* at 269. On appeal, this Court held that the failure to instruct the jury on every element of the crime with which the defendant is charged constitutes per se reversible error and is not subject to the procedural bar. *Id.* at 275. Importantly, this Court also declined to apply the harmless-error analysis to the defendant's claim, finding that doing so would deprive the defendant of his right to a trial by jury. *Id.* at 275.

¶10. We find that *Harrell* is not implicated in the instant case. The elements of burglary are (1) "breaking and entering the dwelling house or inner door of such dwelling house of another" (2) "with the intent to commit some crime therein[,]" and Windless's jury was

6

instructed as such. Miss. Code Ann. § 97-17-23(1) (Rev. 2014). But this Court has explained that the elements of the crime which the defendant intended to commit are not elements of burglary. *Daniels*, 107 So. 3d at 964. Thus, the State is not required "to prove each element of the 'intended crime' with the same particularity as is required when a defendant is charged only with the crime intended." *Newburn v. State*, 205 So. 2d 260, 266 (Miss. 1967). This is because burglary "does not contain two separate and distinct 'subcrimes,'" as does capital felony murder. *Booker v. State*, 716 So. 2d 1064, 1067-68 (Miss. 1998). "Rather, the *intent* to commit some crime, be it a felony or a misdemeanor, is simply an element of the crime of burglary." *Id.* at 1068 (emphasis added). "Only the intent need be proven to establish the second element of the crime of burglary." *Moore v. State*, 344 So. 2d 731, 735 (Miss. 1977). Simply put, *Harrell* does not mandate reversal here because the elements of larceny are not elements of the crime with which Windless was charged. Contrary to Windless's argument, the crime of burglary does not have an "underlying offense" within the meaning of *Harrell*.

¶11. Justice Coleman argues that *Conner v. State*, 138 So. 3d 143 (Miss. 2014), requires reversal in this case. However, the *Conner* Court should have reviewed the defendant's claim only for plain error, as he failed to object to the instruction at issue during trial; instead, the Court erroneously relied on *Harrell* to hold that the defendant's claim was not procedurally barred.[2] *Id.* Even so, the *Conner* Court recognized that the jury instruction

---

[2] The cases cited by Justice Coleman to refute the application of the procedural bar are inapposite, as each of those cases deals with the trial court's failure to instruct the jury on an essential element of the charged offense, an issue not present in *Conner* or the instant case. *See Kolberg*, 829 So. 2d 29, 51-52 (Miss. 2002), *overruled on other grounds by*

7

given in that case, like the one in this case, complied with our precedent governing burglary instructions by identifying a specific intended crime. *Id.* Because we have determined that *Harrell* does not apply to this case, Windless waived his right to appeal this issue by failing to object at trial, and we can review his claim only for plain error. *See Smith v. State*, 835 So. 2d 927, 989 (Miss. 2002) (citing *Walker v. State*, 729 So. 2d 197, 202 (Miss. 1988)) ("This Court has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal."); *Brown v. State*, 995 So. 2d 698, 704 (Miss. 2008) ("Any assignment of error otherwise procedurally barred is appealable only when the trial court employed plain error."). The plain-error doctrine requires the finding of not only an error, but one that resulted in a "miscarriage of justice" affecting the defendant's fundamental rights. *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989). We do not find that such an error occurred here. This Court has held that larceny is commonly understood to connote stealing or theft. *Conner v. State*, 138 So. 3d 143, 150 (Miss. 2014) (citing *Commonwealth v. Lawrence*, 418 N.E.2d 629, 631 (Mass. App. Ct. 1981)). The State submitted sufficient evidence for the jury to find that Windless feloniously broke into and entered the victim's house with the intent to steal. *See Butler v. State*, 217 So. 2d 3, 4

---

*Harrell*, 134 So. 2d 266 (Miss. 2014) (finding that the trial court erred in failing to instruct the jury on the elements of the underlying felony of felonious child abuse in a capital-murder case, but finding such error to be harmless beyond a reasonable doubt); *Shaffer v. State*, 740 So. 2d 273, 282 (Miss. 1998) (finding that the trial court committed reversible error by failing to instruct the jury on the elements of the underlying felony of sexual battery in a capital-murder case, and in failing to instruct the jury on an element of depraved-heart murder); *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996) (finding that the trial court committed reversible error in failing to instruct the jury on the underlying felony of robbery in a capital-murder case).

(Miss. 1968) ("Criminal intent may be proved by circumstantial evidence, and may be inferred from the time and the manner in which the entry was made, and the conduct of the accused after the entry."). The fact that there are two statutory categories of larceny is of no import, as the burglary statute simply requires the intent to commit "some crime therein[.]" Miss. Code Ann. § 97-17-23(1) (Rev. 2014). *See Ashley v. State*, 538 So. 2d 1181, 1184 (Miss. 1989) ("[T]he word 'crime' in our burglary statutes includes misdemeanors as well as felonies.").

¶12. Accordingly, since the jury instructions fairly informed the jury of the rules of law applicable to this case, we find this issue to be without merit.

## II. Whether Windless received ineffective assistance of counsel.

¶13. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This Court employs the two-pronged test announced in *Strickland* to determine whether a criminal defendant has received ineffective assistance of counsel. First, the defendant must demonstrate that his counsel's performance was deficient. *Ransom v. State*, 919 So. 2d 887, 889-90 (Miss. 2005). To do so, the defendant's proof must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) (quoting *Strickland*, 466 U.S. at 689). "Then, to determine the second prong of prejudice to the defense, the standard is 'a reasonable probability that, but for

9

counsel's unprofessional errors, the result of the proceeding would have been different.'" *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996) (citing *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991)).

¶14.   Ordinarily, a claim of ineffective assistance of trial counsel is more appropriately brought during post-conviction proceedings, rather than on direct appeal, because "there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008) (citing *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003)).   However, this Court may review a claim of ineffectiveness on direct appeal "if the issues presented are based on facts fully apparent from the record." *Id. See also* Miss. R. App. P. 22(b).   Windless alleges that his claim meets the above standard, and he raises four instances of alleged deficient performance.   Windless claims that his attorney (1) failed to present an opening statement, (2) failed to object to the State's jury instructions, (3) elicited prejudicial testimony concerning his polygraph examination, and (4) elicited prejudicial testimony concerning his criminal record.   We find that these claims would be more appropriately presented in a petition for post-conviction relief.   Accordingly, we dismiss Windless's ineffective-assistance claim without prejudice.

## CONCLUSION

¶15.   For the foregoing reasons, we affirm Windless's conviction and sentence.

¶16.   **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE, AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. CHANDLER, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.**

**CHANDLER, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶17.    I agree with the plurality's holding that the jury was properly instructed in this case. The jury was instructed on the essential elements of capital murder with the underlying felony of burglary. The burglary instruction stated that the jury could find guilt if Windless broke and entered "with the intent to commit the crime of larceny." In *Conner v. State*, 138 So. 3d 143, 150 (Miss. 2014), this Court recognized that "the general lay understanding of the term 'larceny' is that it connotes stealing or theft." I agree that, under *Conner*, no instruction on the elements of larceny was required.

¶18.    I disagree with the plurality's conclusion that this Court erred in *Conner* by failing to procedurally bar this issue and reviewing it under the well-established rule that "the trial court must 'assure that the jury is "fully and properly instructed on all issues of law relevant to the case."'" *Id.* at 149 (quoting *Harrell v. State*, 134 So. 3d 266, 270 (Miss. 2014)). The plurality is correct that, to obtain a burglary conviction, the State need only show that the defendant intended to commit the specified crime, and it need not prove the essential elements of that intended crime. *Booker v. State*, 716 So. 2d 1064, 1068 (Miss. 1998). But with no understanding of the acts comprising the intended crime, a jury cannot accurately determine whether the defendant harbored the requisite intent. Thus, the jury's comprehension of the intended crime is essential to its ability to determine whether the

11

defendant committed burglary. I would not relieve the trial court of its duty to "render[]
proper guidance to the jury via appropriately given jury instructions" concerning the intended
crime in a burglary case. *Harrell*, 134 So. 3d at 270.

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶19.     Simply put, I dissent because there is no way the jury properly could have found
beyond a reasonable doubt that Anthony Windless intended to commit a larceny without
knowing the elements, under Mississippi law, of larceny.  Trial courts are not required to
instruct juries on the meaning of every word in the English language.  But the crime of
larceny is not universal.  For instance, the statutes in some states have broadened the
common-law elements of larceny—which, themselves, were never provided to the jury— to
include such other crimes as false pretenses and embezzlement, while others (including
Mississippi) have not.[3]  The abridged ninth edition of Black's Law Dictionary defines fifteen
different kinds of larceny, each with its own definition.[4]  What is worse, Mississippi
statutes—which, by the way,  include no crime called "larceny"—list fourteen different
statutes that make certain defined larcenies.[5]  Which larceny statute applied in this case?
Neither the jury nor a single justice on this Court knows.  To assume, as does the plurality,
that the jury understood the term "larceny" with no instruction from the trial court is, in my
view, indefensible.

---

[3] *Larceny*, Black's Law Dictionary (abr. 9th ed. 2010).

[4] *Id*.

[5] Miss. Code Ann. §§ 97-17-41–64 (Rev. 2014).

¶20.    Jury instructions must "'fairly announce the law of the case and create no injustice,'" and when the instructions, read as a whole, accomplish this task, "'no reversible error will be found.'"[6] But when a trial court fails to instruct a jury on all the elements of the charged crime, or to provide any instruction, the error is per se reversible error and this Court will not engage in harmless-error analysis.[7] This is because

> a decision of the Mississippi Supreme Court rendering it harmless for a person in Mississippi to be convicted of a crime with the Court, rather than the jury, deciding the sufficiency of the evidence against the person impairs, infringes upon, violates, and renders broken the right to a jury trial.[8]

¶21.    The failure of a defendant in a criminal case to object to an inadequate jury instruction on the elements of the crime charged will not prevent this Court from reviewing the adequacy of the jury instructions.[9] In a criminal prosecution, the trial court and the State both share responsibility for making sure "the jury is 'fully and properly instructed on all issues of law relevant to the case.'"[10] While "the State is responsible for making sure the jury is instructed on the essential elements of the crime,"[11] there can be "no doubt that the trial court is

---

[6] *Rubenstein v. State*, 941 So. 2d 735, 785 (Miss. 2006) (quoting *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997)).

[7] *Harrell v. State*, 134 So. 3d 266, 271–72 (Miss. 2014).

[8] *Id.* at 274.

[9] *Id.* at 270 ("Harrell did not bring the omission to the attention of the trial court by objecting to the State's instruction or submitting an instruction on the elements of robbery. Nonetheless, the issue is not procedurally barred.").

[10] *Id.* (quoting *Kolberg v. State*, 829 So. 2d 29, 46 (Miss. 2002)).

[11] *Harrell*, 134 So. 3d at 270 (quoting *Hunter v. State*, 684 So. 2d 625, 635 (Miss. 1996)).

13

ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even sua sponte."[12]

¶22. Crimes have elements. And sometimes—as in this case—one or more of the elements, themselves, may have elements. But whether the element is of the crime charged, or is an element of one of the elements of the crime, the jury must know the elements in order to find the State has proved them beyond a reasonable doubt.

¶23. In *Harrell v. State*, this Court found that the failure to instruct the jury properly on the elements of robbery in a capital-murder case—where robbery was the underlying felony—violated the defendant's right to a trial by jury as guaranteed by the Mississippi Constitution and that the error was per se reversible.[13] The trial court instructed the jury on the elements of capital murder but failed to give a separate instruction on the elements of robbery.[14] This Court overruled its prior opinion in *Kolberg v. State* and held that such errors are not subject to harmless-error review and are subject to automatic reversal.[15]

¶24. This Court relied on the strong language in the Mississippi Constitution that "[t]he right of trial by jury *shall remain inviolate*."[16] So, in a criminal case, it is essential that the

---

[12] *Harrell*, 134 So. 3d at 270 (quoting *Kolberg*, 829 So. 2d at 46).

[13] *Harrell*, 134 So. 3d at 267.

[14] *Id.* at 270.

[15] *Id.* at 272 (citing *Kolberg*, 829 So. 2d at 29).

[16] *Harrell*, 134 So. 3d at 271 (citing Miss. Const. art. 3, § 31).

14

jury be instructed on every element of the charged offense, and when the jury receives no such instruction, reversal is required.[17]

¶25. Mississippi Code Section 97-3-19(1)(c) defines the crime of capital murder as "[t]he killing of a human being without the authority of law . . . [w]hen done without any design to effect death by any person engaged in the commission of . . . burglary . . . ." And Mississippi Code Section 97-17-23(1) codifies the crime of burglary and prescribes punishment for "[e]very person who shall be convicted of breaking and entering the dwelling house . . . of another . . . with the intent to commit some crime therein . . . ." "'One of the essential elements of the crime of burglary is the intent to commit a *specific* crime.'"[18] The State must give the defendant prior notice of that specific crime and offer proof that the defendant intended to commit it, and the jury must find beyond a reasonable doubt that the defendant intended to commit that specific crime.[19] I do not believe the jury could complete this task without an instruction explaining the legal meaning of larceny as charged by the State.

¶26. Recently, this Court held that jury instructions for burglary must fairly identify the crime the defendant intended to commit, and when the underlying crime is larceny, the instructions must comply with this requirement "by identifying larceny as the crime [the

---

[17] *Harrell*, 134 So. 3d at 273.

[18] *Bolton v. State*, 113 So. 3d 542, 544 (Miss. 2013) (citing *Daniels v. State*, 107 So. 3d 961, 964 (Miss. 2013)).

[19] *Daniels*, 107 So. 3d at 964.

15

defendant] intended to commit."[20]  Last year, in *Conner v. State*, this Court said that the general lay understanding of the term "larceny" is that it connotes stealing or theft.[21]  This Court said that "the trial court should instruct the jury on the elements of the intended crime in a burglary trial; here, the jury instructions correctly instructed the jurors that they could find Conner guilty of burglary if they found he broke and entered the victim's dwelling with the intent to steal."  So "the jury instructions fairly, although not perfectly, instructed the jury on the applicable law."[22]

¶27.    Justice Coleman has provided an excellent analysis of why our decision in *Conner* is no justification for what the plurality does today.  For the reasons he states, and the reasons stated above, I respectfully dissent.

**KITCHENS AND KING, JJ., JOIN THIS OPINION**.

**COLEMAN, JUSTICE, DISSENTING:**

¶28.    Like today's case, in *Conner v. State*, 138 So. 3d 143 (Miss. 2014), the defendant was charged with burglary.  *Id.* at 146 (¶ 1).  In that case, a majority of the *Conner* Court – including me – voted to affirm the conviction.  In a final similarity, at least for my purposes, in *Conner*, the defendant raised on appeal the failure of the trial judge to instruct the jury as to the elements of larceny.  *Id.* at 149.  In affirming, the *Conner* Court relied on the trial

---

[20] *Conner v. State*, 138 So. 3d 143, 149 (Miss. 2014) (citing *Daniels*, 107 So. 3d at 964).

[21] *Conner*, 138 So. 3d at 150 (citing *Commonwealth v. Lawrence*, 418 N.E.2d 629, 631 (Mass. App. Ct. 1981)).

[22] *Conner*, 138 So. 3d at 150.

16

court's instruction to the jury that "[a]n inference of the intent to steal may arise from proof of the breaking and entering." *Id.* at 149-150 (¶ 16). Specifically, the ***Conner*** Court wrote as follows:

> While the trial court should instruct the jury on the elements of the intended crime in a burglary trial, here, the jury instructions correctly instructed the jurors that they could find Conner guilty of burglary if they found he broke and entered the victim's dwelling with the intent to steal. We find that the jury instructions fairly, although not perfectly, instructed the jury on the applicable law; therefore, we affirm Conner's burglary conviction.

*Id.*

¶29. The ***Conner*** Court held the jury to have been fairly instructed *because* the trial court gave the above-quoted instruction on the inference of an intent to steal. Without the inference instruction, the ***Conner*** Court apparently would have reached a different result. It is not the jury instruction on burglary alone that the ***Conner*** Court held to be sufficient, as suggested by the plurality in response to my dissent, (Plur. Op. at ¶ 11), but the burglary instruction plus the inference instruction. No such inference instruction exists in partnership with the burglary instruction in today's case, and if the Court were to follow its logic and

17

holding in ***Conner***, which for some reason it does not,[23] then Windless's conviction should be reversed. Accordingly and with respect, I dissent.

**DICKINSON, P.J., JOINS THIS OPINION.**

---

[23]The plurality would offer a mistake by the ***Conner*** Court in failing to analyze the issue under a plain error analysis as the reason. (Plur. Op. at ¶ 11). The plurality would blame the mistake on misplaced reliance upon ***Harrell v. State***, 134 So. 3d 266, 270 (¶ 14) (Miss. 2014), but we have held in several cases that errors in jury instructions are not procedurally barred because the responsibility to offer correct instruction to the jury lies, in the end, with the trial judge and the State. *See* ***Kolberg v. State***, 829 So. 2d 29, 46 (Miss.2002), *overruled on other grounds by* ***Shaffer v. State***, 740 So. 2d 273, 282 (Miss. 1998); ***Hunter v. State***, 684 So. 2d 625, 636 (Miss. 1996) (stating that "[i]t is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged . . . even though the defendant did not present an acceptable instruction, the State was obligated to do so").