# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00900-COA

**TERRY JOHNSON**                                                                 **APPELLANT**

**v.**

**TERESA JENKINS JOHNSON**                                                **APPELLEE**

DATE OF JUDGMENT:                    05/25/2018
TRIAL JUDGE:                               HON. KENNETH M. BURNS
COURT FROM WHICH APPEALED:   CHICKASAW COUNTY CHANCERY
                                                     COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          GENE BARTON
ATTORNEY FOR APPELLEE:            TERESA JENKINS JOHNSON (PRO SE)
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
DISPOSITION:                              AFFIRMED - 08/13/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Terry Johnson appeals from a final judgment of the Chancery Court of the Second

Judicial District of Chickasaw County, in which he was granted a divorce from Teresa

Jenkins Johnson.  Terry claims the chancellor erred by (1) failing to consider Teresa's

extramarital affairs when dividing the marital property, and (2) admitting Teresa's counseling

records into evidence.  Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Terry and Teresa were married in March 1998.  In November 2017, Teresa filed a

complaint for divorce alleging habitual cruel and inhuman treatment or, in the alternative,

irreconcilable differences. Terry filed a counter-complaint, which made the same allegations against Teresa and was later amended to include adultery.

¶3.　　During their marriage, Terry and Teresa lived in a house that Teresa's mother previously owned and located on three acres of land. In 2003, the house was deeded to Teresa and placed in her name. But in 2008, during foreclosure proceedings, Terry purchased the house for $13,000. At trial, Terry and Teresa agreed that the value of the house was approximately $50,000. Both Terry and Teresa were employed. Teresa testified that she did not have a retirement account. However, Terry's retirement account was valued at approximately $42,000. Terry reported an additional $3,500 on his tax return as a pension; however, he could not explain where it came from.

¶4.　　Terry accused Teresa of misspending money and having extramarital affairs throughout their marriage. Teresa admitted that, without Terry's permission, she had applied for and was issued three credit cards in Terry's name. However, according to Teresa, Terry told the credit card companies that he did not know who applied for the credit cards. And Teresa did not believe that Terry paid for any of the charges.

¶5.　　Teresa also admitted to having extramarital affairs with two men from 2003 until 2011 and 2014 until 2017. However, Teresa suspected that Terry had an affair as well. Teresa testified that they were both physically abusive. But she claimed that Terry was also verbally and emotionally abusive and that the abuse escalated over the years. Teresa testified that Terry called her names, including "burnt up b[****]."[1] And at one point Terry threatened

---

[1] Teresa had been in an house fire as a child and suffered burns to her body.

2

to kill her.

¶6.    In 2012, Teresa went to the S.A.F.E. House in Tupelo, Mississippi.  The S.A.F.E. House provided counseling to Teresa from October 29, 2012 until June 6, 2016.  At the time of trial, Teresa was receiving counseling from the West Main Psychiatric and Counseling Clinic.  Teresa testified that she discussed the affairs and the abuse with the counselors.  The chancery court admitted Teresa's counseling records into evidence over Terry's objection. Teresa testified that she had been taking anxiety and depression medication regularly for at least one year.

¶7.    In May 2018, the chancery court entered its final judgment awarding Terry a divorce based on adultery.  Teresa was awarded the marital property, which included the house valued at $50,000 and the three acres valued at $6,000.  She was also awarded the following separate property: a 1988 Chevrolet Cavalier valued at $300; a 2004 Oldsmobile Alero valued at $500; and a 2014 Chevrolet Malibu valued at $4,000.  Terry was awarded the following separate property: a 1989 GMC truck valued at $1,500; a 1995 Oldsmobile Sierra valued at $500; a 2002 GMC Sierra valued at $4,500; a 2004 Chevrolet Silverado valued at $5,000; a 2010 Nissan Altima valued at $5,000; a Chevrolet Cavalier valued at $500; an Oldsmobile Sierra valued at $500; and his retirement account valued at approximately $42,000.

¶8.    Terry filed several post-trial motions claiming, among other things, that the chancellor did not consider Teresa's extramarital affairs when dividing the marital property and erred in accepting Teresa's medical records when a doctor did not testify at trial.  After the denial

3

of his post-trial motions, Terry appealed.

## STANDARD OF REVIEW

¶9.     "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous or applied an erroneous legal standard." *Cockrell v. Cockrell*, 139 So. 3d 766, 769 (¶9) (Miss. Ct. App. 2014) (quoting *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶8) (Miss. 2002)).

## DISCUSSION

¶10.    We note that Teresa has failed to file a brief in this matter. This Court has held that the failure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless we can say with confidence, after considering the record and the brief of the appealing party, that there was no error. *Id*. at 770 (¶10). We have considered the record and Terry's brief, and we can say with confidence that there was no error.

### I.     Marital Fault

¶11.    Terry claims that the chancellor abused his discretion by failing to consider Teresa's extramarital affairs when dividing the marital property.

¶12.    In ordering an equitable distribution of property, a chancellor is required to make findings of fact regarding the *Ferguson* factors.[2] *Bond v. Bond*, 69 So. 3d 771, 772-73 (¶5) (Miss. Ct. App. 2011). These factors include:

> (1) contribution to the accumulation of property, (2) dissipation of assets,
> (3) the market or emotional value of assets subject to distribution, (4) the value

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

4

of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.

*Id.* (quoting *Hults v. Hults*, 11 So. 3d 1273, 1281 (¶36) (Miss. Ct. App. 2009)). This Court has held that chancellors should also consider each party's marital fault when it impacts upon the harmony and stability of the marriage. *Id.* at 773 (¶7); *see also Ferrara v. Ferrara*, 190 So. 3d 884, 893 (¶31) (Miss. Ct. App. 2016).

¶13. In assessing Terry and Teresa's contribution to the stability and harmony of the marriage, the chancellor found:

> The parties were married on March 13, 1998[,] and both parties continue to reside in the marital residence. Teresa admitted to having extramarital affairs with two different men. Terry was at various times verbally, emotionally[,] and physically abusive toward Teresa during the marriage. Taking into account the totality of the credible proof, neither party has made a greater contribution to the harmony of the home than the other.

Furthermore, in the order denying Terry's post-trial motions, the chancellor noted that "[t]here were numerous times when [Terry] was abusive to [Teresa] and his abuse contributed to the breakdown of this marriage."

¶14. Therefore, Terry's contention that the chancellor did not make explicit findings on Teresa's marital fault is without merit. The order shows the chancellor explicitly considered Teresa's adultery in his *Ferguson* analysis.

¶15. Terry also claims that the chancellor stated that he "was required to divide all of the property equally" and that the chancellor's distribution was not equal. Terry's argument is not supported by the record. When discussing various items of personal property, the court

stated: "I just want [Terry] to understand that when you've got a marriage of this [length], usually we split *this stuff* up equally . . . ." (Emphasis added). It is clear that the chancellor's statement was limited to the division of personal property. And in the final judgment, the chancellor ordered: "Each party shall equally divide the personal property and contents located in the marital residence by a listing process to be coordinated through counsel." Furthermore, although Teresa was awarded the house, the land, and three vehicles, the total value of her assets was $60,800. By comparison, Terry was awarded his retirement account as well as seven vehicles for a total value of approximately $59,500.

## II. Counseling Records

¶16. Terry claims the counseling records from the S.A.F.E. house constituted hearsay, and that the chancellor erred by admitting them into evidence over his hearsay objection at trial.[3] Although records of a regularly conducted activity are an exception to the rule against hearsay, Terry claims for the first time on appeal that the records were not properly certified and that he did not receive notice of the records as required by Mississippi Rules of Evidence 803(6) and 902(11).

¶17. Rule 902(11)(B) states:

> Before the trial or hearing at which the record will be offered, the proponent must give an adverse party notice of the intent to offer the record—and must provide a copy of the record and certificate—so that the party has a fair opportunity to state any objection. Otherwise, the record is not self-authenticating under this paragraph (11).

¶18. Terry asserts that he did not receive the certificate until the day before trial, and has

---

[3] Terry does not take issue with the admission of Teresa's counseling records from the West Main Psychiatric and Counseling Clinic.

6

attached emails to his record excerpts in support of his assertion. However, these emails are not part of the official record in this case. This Court has held that it "will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record." *Evans v. State*, 742 So. 2d 1205, 1209 (¶13) (Miss. Ct. App. 1999). "If a party believes that the appellate record contains errors or omissions, the proper procedure for 'Correction or Modification of the Record' is outlined in Mississippi Rule of Appellate Procedure 10(e)." *Kimball Glassco Residential Ctr., Inc. v. Shanks*, 64 So. 3d 941 n.3 (Miss. 2011). Accordingly, this Court will not consider the extra-record materials filed with the record excerpts.

¶19. Furthermore, while Terry objected to the admission of the records at trial, Rule 902(11)(C) states that "[a]n adverse party waives any objection that is not: (i) stated specifically in writing; and (ii) served within 15 days after receiving the notice required by subparagraph (B), or at a later time that the parties agree on or that the court allows." However, Terry did not object to the certificate in writing prior to trial.

¶20. Nevertheless, any error in admitting the records was harmless. Teresa testified that she told the counselors about her extramarital affairs and the abuse between her and Terry. The counseling records merely reiterate what Teresa testified to at trial. *See Bower v. Bower*, 758 So. 2d 405, 413 (¶38) (Miss. 2000).

## CONCLUSION

¶21. After reviewing the record, we find that the chancellor considered Teresa's extramarital affairs in his *Ferguson* analysis. We further find that Terry waived his claims

7

that Teresa's counseling records were not properly certified and that he did not receive notice of the records. Therefore, we affirm the judgment of the Chancery Court of the Second Judicial District of Chickasaw County.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE AND McCARTY, JJ., CONCUR. J. WILSON, P.J., McDONALD AND C. WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND C. WILSON, JJ. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**TINDELL, J., CONCURRING IN RESULT ONLY:**

¶23. As to the admission of the counseling records, I cannot find that Terry's failure to comply with the requirements of Mississippi Rule of Evidence 902(11)(C) waived the issue. This is because Rule 902(11)(B) requires the proponent of such records to "give an adverse party notice of the intent to offer the record . . . ." "Otherwise, the record is not self-authenticating under this paragraph (11)." *Id.* As Rule 902's advisory committee note explains, Rule 902(11)(B) "requires that the proponent have early anticipation of the use of this method so there is time before trial for notice, objections[,] and a hearing." Since the official record in this case is void of such notice,[4] I believe Terry's oral objection to the records' admission at trial was sufficient to preserve this issue for our consideration upon

---

[4] As the majority notes, Terry attached emails to his record excerpts indicating that he did not receive the certificate until the day before trial. While we cannot consider those emails because they are not part of the official record, it is fair to say that providing notice upon the eve of trial would not comply with the intent of Rule 902(B). Without proof of such notice in the official record, which is the proponent's responsibility, there is simply no proof that notice was ever provided. As such, the records would be inadmissible.

appeal. Regardless, I agree with the majority that the admission of the records was harmless. I therefore concur with the majority's result.

**McDONALD AND C. WILSON, JJ., JOIN THIS OPINION.**

**WESTBROOKS, J., DISSENTING:**

¶24. I disagree with my esteemed colleague that the chancellor considered the impact that Teresa's adulterous conduct had on her marriage to Terry. The chancellor briefly mentioned in the order that Teresa admitted to having extramarital affairs with two different men and that Terry was abusive[5] toward Teresa in the relationship; however, the order lacked elaboration on how Teresa's affairs burdened the stability and harmony of the marriage. I believe that the circumstances in this case require a more thorough analysis, especially since the divorce was granted based on Teresa's adultery.

¶25. The Mississippi Supreme Court has reversed and remanded cases when the chancellor did not consider how an extramarital relationship "impacted and burdened the stability and harmony of the marriage." *Watson v. Watson*, 882 So. 2d 95, 108 (¶68) (Miss. 2004) (quoting *Singley v. Singley*, 846 So. 2d 1004, 1009 (¶13) (Miss. 2002)). In *Watson*, the Supreme Court found that the trial court ignored adulterous conduct and equally divided the assets. *Id*. at 109 (¶68). The case was remanded for recalculation of marital assets based on the husband's adulterous relationship.

¶26. Accordingly, the case should be reversed and remanded for the chancellor to make

---

[5] Teresa admitted that both she and Terry were abusive toward each other in their marriage and that she applied for and was issued three credit cards without Terry's permission.

adequate findings on the record to reflect how Teresa's adulterous relationships impacted and burdened the stability and harmony of the marriage. *See Watson*, 882 So. 2d at 111 (¶79) (citing *Singley v. Singley*, 846 So. 2d 1004, 1009 (¶13) (Miss. 2002)).

¶27. It is important to note that after the chancellor's thorough consideration and analysis of Teresa's conduct, the distribution of marital assets may be modified or remain. However, without a thorough analysis and consideration of Teresa's conduct, the order and final judgment appears to reflect that the marital assets were erroneously distributed.

¶28. Therefore, I respectfully dissent.